55 So.2d 873 (1951)
220 La. 77
OVERBY
v.
BEACH et al.
No. 39550.
Supreme Court of Louisiana.
May 28, 1951.
On Rehearing November 5, 1951.
Rehearing Denied December 10, 1951.
*874 Connolly & Simoneaux, New Orleans, for plaintiffs-appellants.
Harold M. Rouchell, R. A. Dowling, New Orleans, for appellees.
HAMITER, Justice.
Mrs. Eunice Overby Beary, wife of Allan R. Beary, Jr., and a resident of Orleans Parish, instituted this rescission action to obtain the annulment of several instruments by and through which she acquired by purchase certain real property in the City of New Orleans bearing Municipal Nos. 4810-12-14-16 Pitt Street and consisting of five separate apartments under the same roof.
To plaintiff's petition the defendants, Mr. and Mrs. Albert J. Babin and the French Market Homestead Association, tendered exceptions of no right and no cause of action. The district court sustained the exceptions and dismissed the suit of plaintiff. She is appealing.
According to the allegations contained in the petition of plaintiff, on which the exceptions are determinable, she became interested in acquiring for investment purposes the above property which had been listed for sale with a certain New Orleans real estate agency by the owners, Mr. and Mrs. Babin. In the written contract of listing, dated July 7, 1948, the Babins had designated the legally collectible rental which they were receiving for each of the five apartments. While negotiating for the purchase of the property plaintiff required the Babins "to warrant to her in writing what the legally collectible rents for each of the said five apartments in the property on Pitt Street were", and they gave to her the "written warranty".
On August 3, 1948, plaintiff further alleges, she executed with the Babins a written agreement to purchase the property for the total price of $23,400 upon the following terms: Paying to the Babins $5400 in cash, and giving them a second mortgage note of $6000; and delivering to the French Market Homestead Association a vendor's lien and first mortgage note of $12,000, it having agreed to lend that sum for payment to the Babins.
On September 8, 1948, in consummating the purchase agreement, authentic acts were passed before the same notary whereby the Babins conveyed to the Homestead Association, it reconveyed to plaintiff (retaining the vendor's lien and special mortgage), and the latter granted to the Babins the second mortgage.
On January 31, 1949, plaintiff was informed that the rental charged for one of the apartments was in excess of the maximum permitted by the Office of Price *875 Administration. Thereupon she consulted the New Orleans branch of that Federal agency and "discovered that the registered O. P. A. ceiling rentals for each and every one of the five apartments contained within the property at issue in these proceedings were at variance with the sums which had been represented to the petitioner by the defendants in these proceedings as being legally collectible under their warranty in writing." The variance as to all of the five apartments totaled $98 per month, $277 being the O. P. A. ceiling and $375 being the "warranted legally collectible" rental.
Other pertinent allegations contained in plaintiff's petition are the following:
"Petitioner alleges that the principal cause of her entering into the agreement to purchase the property and later actually purchase the said property, and the principal motive which she had in making the investment was the result of the warranty in writing by the defendants in these proceedings, the Babins, that the rents shown in said warranty and shown in the listing agreement heretofore described and referred to were legally collectible and would remain legally collectible by the purchaser, the plaintiff in these proceedings, from and after the act of sale by the parties, plaintiff and defendants, was passed.

* * * * * *
"* * * Petitioner alleges that had she had the least cause to believe or know that the rentals represented to her as being collectible were not legally collectible, she would never have entered into the contract of purchase or effectuated the same.
"Petitioner now alleges in the alternative that there occurred either error of fact as a result of the said written warranty of the defendants by which there was no meeting of the minds and no consent between the parties, the seller and purchaser, to-wit: your petitioner and the Babins, or that the Babins deliberately misrepresented the legally collectible rentals to the petitioner with the intent and purpose to defraud the petitioner by obtaining her consent to pay the asked purchase price, and that they deliberately misrepresented the legally collectible rents for that reason and for that purpose.
"Petitioner alleges that, under the circumstances, she is entitled to a rescission of the whole agreement as having been induced by either error of fact, or in the alternative, by fraud practiced upon the petitioner by the defendants, and that there was no meeting of the minds and no contract between the parties. Petitioner alleges that she is entitled to have this Honorable Court rescind the agreement to purchase and the agreement of sale, and that she is entitled to be restored to the position she occupied prior to her signature of the agreement to purchase and her signature to the act of sale and various acts of mortgages."
Annexed to and made a part of plaintiff's petition are certified copies of the several documents alleged on and mentioned above.
At the outset, in considering defendants' exceptions of no cause of action directed to the petition, and which were sustained by the district court, it is to be noted that plaintiff's demand is predicated entirely on alleged misrepresentations of the Babins, as to legally collectible rentals, contained in the written real estate listing and also in the document termed by plaintiff "the warranty in writing." The Homestead Association is not charged at all with misrepresenting the revenue; nor is there any provision respecting such rentals in the executed contract to purchase or in the notarial acts of conveyance, reconveyance and mortgage. It becomes necessary, therefore, to examine the two documents relied on by plaintiff for the success of her action, certified copies of which are annexed to the petition and control the allegations thereof.
The written real estate listing consists of a small card, on one side of which, above the signature of the Babins, are stipulations (both printed and typewritten) with reference to the employment of the realtor, for a period of three months, to sell the property at a specified price. The reverse side of the card originally blank, contains typewritten information concerning the five apartments, including the monthly revenue produced by each. This information was evidently typed thereon by the realtor after obtaining it from the Babins; however, *876 the signatures of the latter do not appear along with it.
The other document, or the alleged "warranty in writing," is typewritten (with a few interlined corrections made with pen and ink) on two pages, one of which bears the signatures of the Babins and plaintiff's husband. It is titled "Furniture inventory of XXXX-XX-XX-XX Pitt Street." Then follows a listing of each apartment by its address, along with a monthly monetary figure set opposite, such as: "4810 Lower Front Apt. $100. mo."; and under the listings are detailed descriptions of the furniture contained in the respective apartments. The document contains no other information or language. It does not recite, and certainly it is not as plaintiff alleges, a warranty of legally collectible rentals. In fact, there is nothing to indicate exactly what was intended by the stipulated monthly amount set opposite each listed apartment. It might well have meant the monthly revenue then being received by the Babins without regard to whether it was legally permissible or not.
Viewed in a light most favorable to plaintiff, the two documents, with respect to rentals, constitute only false assertions by the Babins relative to an element of the value of that which was the object of the purchase and sale transaction. The property, consisting exclusively of apartments, is and has been maintained for purposes of investment; and its value is determined largely by the rentals or revenues that it produces. The question then is: Do these false assertions amount in law to such fraud as will form the basis of an action of rescission? Under the facts and circumstances of this case we think not.
Found in Article 1847 of the Revised Civil Code, under that section treating of the nullity resulting from fraud of conventional obligations, are certain rules relative to fraud as applied to contracts. Included in the article are the following provisions:
"Fraud, as applied to contracts, is the cause of an error bearing on a material part of the contract, created or continued by artifice, with design to obtain some unjust advantages to the one party, or to cause an inconvenience or loss to the other. From which definition are drawn the following rules:
"1. Error is an essential part of the definition; an article [artifice] that can not deceive can have no effect in influencing the consent, and can not injure the validity of the contract.
"2. The error must be on a material part of the contract, that is to say, such part as may reasonably be presumed to have influenced the party in making it; but it needs not be the principal cause of the contract, as it must be in the case of simple error without artifice.
"3. A false assertion as to the value of that which is the object of the contract, is not such an artifice as will invalidate the agreement, provided the object is of such a nature and is in such a situation that he, who is induced to contract by means of the assertion, might with ordinary attention have detected the falsehood; he shall then be supposed to have been influenced more by his own judgment than the assertion of the other.
"4. But a false assertion of the value or cost, or quality of the object, will constitute such artifice, if the object be one that requires particular skill or habit, or any difficult or inconvenient operation to discover the truth or falsity of the assertion. * * *"
No difficult or inconvenient operation was required of this plaintiff to discover the truth or falsity of the assertions charged to the Babins respecting the revenue production of the apartments. Rentals of residential property today are matters of Federal regulation and control, and those permitted to be collected can easily be determined by any interested person through a request to the proper authority. In the City of New Orleans, where the apartments are located and where plaintiff resides, is and has been for years a branch of the Office of Price Administration from which plaintiff could have obtained on mere inquiry official information as to the legally permissible rentals. She, in other words, might with ordinary attention have detected the falsehood. Not having sought the official *877 information she is supposed to have been influenced more by her own judgment than by the assertions of the Babins.
Regarding the failure of plaintiff to make the mentioned inquiry, her counsel, in his brief, states: "* * * There was the possibility that had Mrs. Beary so applied to the O. P. A. she would have been given erroneous information. If she had depended entirely upon O. P. A. information sought for by her and given to her by it, and had not been given the plain and specific representation and warranty of the collectible rents by her vendors, she could not then have filed this suit and asked for a rescission of this sale because it would have been stated, then, by the Babins, that Mrs. Beary had not asked them to represent or warrant what the collectible rents were. Mrs. Beary, under the circumstances, would have probably been without a cause of action."
It cannot be assumed that the Federal authority would have given plaintiff erroneous information; rather the contrary would seem likely. But had she inquired and had been misinformed, it could then be said that she proceeded with ordinary attention and took all possible precautions; and a proposition of law different from the one now under consideration would be presented.
There are numerous decisions supporting the above expressed view that the false assertions of the Babins, under the circumstances of this case, did not constitute such fraud as will justify a rescission of the sale.
In Rocchi v. Schwabacher & Hirsch, 33 La.Ann. 1364, the court quoted with approval language of the United States Supreme Court found in Slaughter's Administrator v. Gerson, 13 Wall. 379, 20 L.Ed. 627, as follows: "The misrepresentation which will vitiate a contract of sale, and prevent a court of equity from aiding its enforcement, must not only relate to a material matter constituting an inducement to the contract, but it must relate to a matter respecting which the complaining party did not possess at hand the means of knowledge; and it must be a misrepresentation upon which he relied, and by which he was actually misled to his injury. * * Where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say that he has been deceived by the vendor's misrepresentations. * * *"
In Forsman et al. v. Mace et al., 111 La. 28, 35 So. 372, 373, the plaintiffs sought to have set aside their purchase of a logging contract and of a logging outfit, they alleging (among other things) that their consent "to the contract was induced by the fraud of the defendants, who grossly exaggerated the quantity of the timber to be hauled, and represented the haul to be much shorter and the outfit to be in much better condition than was true". As to these charges the court observed and held:
"After reading and carefully weighing the evidence pro and con the other grounds of nullity, we are not satisfied that the fraud complained of has been made out. Two of the plaintiffs were experienced timbermen. They were taken to the logging camp, and afforded the fullest kind of opportunity to examine and be informed as to the condition of the oxen, and as to the location and quantity of the timber. By so simple a thing as looking at the map of the parish they could have known of the distance. They went over the land to look at the timber, and if they did not go over all of it they have but themselves to blame. We think the case is fully covered by paragraph 3 of article 1847, Civ.Code, reading as follows: * * *
"It may be that defendants did not, though they say they did, inform plaintiffs that the timber had been estimated by an expert, and the quantity fixed at 6,000,000 feet; and it may be they did, though they say they did not, tell plaintiffs that in their opinion the timber would cut 18,000,000 feet; but the field was as wide open to plaintiffs as to defendants to make estimates on the timber. It is not pretended that this estimate of 18,000,000 feet was given as the result of an examination made by experts.
*878 "If the oxen are as bad off as plaintiffs and some of their witnesses depict them, plaintiffs have but themselves to blame for buying them. They were given a full opportunity to inspect them.
"The preponderance of the evidence is that in speaking of the haul the defendants had reference to the average haul, not to the furthest haul. A glance at the map (and plaintiffs do not deny that they were advised by the defendants to get one, and they had ten days in which to do so) would have shown at once what the furthest haul was.
"That the plaintiffs made a most disadvantageous contract there can be no doubt. But they appeal in vain to the courts. The courts can only enforce the contract as made. The contract is the law of the case, and, though it happens to be a hard law, it must be enforced nevertheless."
Misrepresentations as to the nature, location and value of land were made the basis of an action for rescission of the sale in Pike v. Kentwood Bank, 146 La. 704, 83 So. 904, 905. Therein the court held: "As to the alleged fraud on the part of the bank and its agents in reference to the value and worth of the land, and the uses to which it had been and might be put, these are not such misrepresentations as to cause the contract of sale to be set aside. All of these matters could have been verified by an inspection of the land, which was accessible to the plaintiff at all times."
Citing with approval the Pike and Forsman cases, supra, the court made substantially the same observation in Davitt v. Long-Bell Farm Land Corporation et al., 162 La. 59, 110 So. 88.
And to a similar effect is the holding in Davis v. Lacaze, 181 La. 75, 158 So. 626.
In a supplemental brief, filed after this opinion was prepared, plaintiff's counsel relies on and discusses American Guaranty Company v. Sunset Realty & Planting Company, Inc., et al., 208 La. 772, 23 So.2d 409, in which the two quitclaim deeds were set aside on the ground of concealment of material facts regarding the value of the land involved. The decision is clearly inapplicable for the reason that it was found there (quite unlike the situation here) that the plaintiff could not, without great difficulty and expense, make an investigation to determine the value of the land which was located some two thousand miles from plaintiff's domicile.
Since the plaintiff herein failed to obtain the readily available official information regarding the apartments' legally permissible rentals, she cannot now be relieved of the consequences of that inattenion. And it follows that defendants' exceptions of no cause of action were correctly sustained.
Other contentions were made by defendants under those exceptions and also under the exceptions of no right of action. But it is unnecessary to consider them in view of our above announced conclusion.
For the reasons assigned the judgment appealed from is affirmed.
FOURNET, C. J., dissents and assigns written reasons.
PONDER, J., dissents.
HAWTHORNE, J., concurs in the decree.
McCALEB, J., dissents with written reasons.
FOURNET, Chief Justice (dissenting).
I cannot subscribe to the views expressed in the majority opinion that under the facts as alleged in plaintiff's petition, which must be accepted as true in disposing of defendants' exceptions of no cause of action, the petition fails to state a cause of action. It would appear to me that the petitioner clearly states that she was induced to enter into the contract for the purchase of the property for a stipulated price through the fraudulent misrepresentation of the defendants, Mr. and Mrs. Babin, that the premises were leased as apartments which produced stipulated revenues approved under O. P. A. regulations; and it therefore follows that by the express provisions of the Revised Civil Code she is entitled to have the sale rescindedif not for fraud, then for error of fact.
As to whether the petition states a cause or right of action against the homestead association, *879 that defendant having urged separate reasons in support of its exceptions, I express no opinion, since the majority found it unnecessary to consider this question in view of the dismissal of the case as to both defendants on the exceptions of no cause of action.
McCALEB, Justice (dissenting).
By applying the third and fourth paragraphs of Article 1847 of the Civil Code, which declare, in substance, that false assertions relative to the value, quality, etc., of the object of the contract are not such artifices as will invalidate it provided it be not difficult or inconvenient to discover the truth or falsity of the assertions, the majority conclude that plaintiff has no cause of action because she could have easily discovered the falsity of the representations made by the Babins relative to the legally permissible rentals of the apartments. In resolving thus, the court, in my opinion, has completely overlooked the gravamen of plaintiff's petition and, furthermore, has misapplied Article 1847 to the factual allegations presented.
Initially, plaintiff seeks a rescission of the sale of the apartment house because of an error of fact, resulting from the Babins' representation that the legally collectible rent of the apartments was $375 per month, when the OPA ceiling on the chargeable rental was $277. Plaintiff alleges that she believed this representation and that, had she known otherwise, she would "never have entered into the contract of purchase or effectuated the same". Taking these allegations of fact as true for the purpose of determining the validity of the exception, it seems apparent to me that the sale is subject to rescission for error of fact under Articles 1821, 1823, 1826, 1845 and 2529 of the Civil Code.
Article 1826 declares that no error in the motive can invalidate a contract "unless the other party was apprised that it was the principal cause of the agreement, or unless from the nature of the transaction it must be presumed that he knew it".
Article 1845 provides: "Error as to the other qualities of the object of the contract, only invalidates it, when those qualities are such as were the principal cause of making the contract".
And Article 2529 reads: "A declaration made in good faith by the seller, that the thing sold has some quality which it is found not to have, gives rise to a redhibition, if this quality was the principal motive for making the purchase".
Since plaintiff's specific charges are that the income produced by the apartment house was the principal cause for the making of the contract, it is obvious from the provisions of the above quoted articles of the Code that she, upon making due proof, would be entitled to a rescission of the saleand this, irrespective of whether the representation of the Babins was deliberately false or in good faith.
The third and fourth paragraphs of Article 1847, and the jurisprudence cited by the majority, are inapposite to the case. These paragraphs are mere codifications of the hornbook rule that false assertions of a seller relative to the value, cost or quality of the object are to be regarded as "puffing" on which the buyer is not entitled to rely unless it be difficult or inconvenient to discover the truth. I have no quarrel with this well-established doctrine nor with any of the authorities cited by the majority in support of it. But its inapplicability here is quite manifest because plaintiff alleges specifically that the representation of the Babins relative to the income which the property could legally produce was in the nature of a warranty. And, even if it be not so regarded, it will not do to say that plaintiff was not entitled to rely thereon because she could easily discover the truth. As a matter of fact, there is nothing in the petition which shows that plaintiff could have conveniently ascertained the OPA rental ceiling prices of the apartments. Indeed, the majority, taking cognizance of the location of a branch office of OPA in New Orleans, gratuitously assumes that "plaintiff could have obtained on mere inquiry official information as to the legally permissible rentals".
Inasmuch as the prevailing opinion is confined to a dismissal of plaintiff's suit against both defendants on the above stated ground, I have given no consideration to the separate *880 reasons advanced by the French Market Homestead Association for the maintenance of its exception of no right or cause of action and therefore refrain from expressing any view with respect thereto.
I respectfully dissent.

On Rehearing
McCALEB, Justice.
This matter comes to us from a judgment dismissing plaintiff's suit on exceptions of no cause or right of action. The suit is for a rescission of the sale of an apartment house in the city of New Orleans because of error or fraud, it being alleged that the vendors, Mr. and Mrs. Albert J. Babin, represented to plaintiff, and caused her to believe, that the legally collectible rentals that they were receiving from the apartments comprising the realty investment were $375 per month, whereas, the ceiling rent charges under fixings by the Office of Price Administration could not exceed $277.
In affirming the judgment of the trial court on first hearing, it was held that plaintiff was without a cause of action because the misstatement or misrepresentation of the vendors was merely a false assertion respecting the value of the object of the contract which could not serve as a cause for rescission of the sale inasmuch as plaintiff could have detected its falsity by inquiry at the office of the OPA where she would have undoubtedly been given the correct information.
A reconsideration of the matter has convinced us that our former view was erroneous and that paragraph 3 of Article 1847 of the Civil Code, which was cited as authority supporting the conclusion, is without application to the factual allegations presented by the petition. That paragraph provides, in substance, that a false assertion "as to the value of that which is the object of the contract, is not such an artifice as will invalidate the agreement" in cases where the object is such that he who claims to have been induced to contract might have "with ordinary attention" detected the falsehood.
In the case at bar, the misrepresentation was not as to the value of the object of the contract but rather a misstatement concerning a quality of the object. It was not an assertion as to how much the apartment house was worth or how much rent it should or would produce; it was the misrepresentation of a fact respecting the legal amount of rent the apartments were actually bringing at the time the agreement was confected. And, according to plaintiff's allegations, it was because of this representation that she was induced to purchase the property. These averments, which must be accepted as true for the purpose of considering the exception, amply state a cause for rescission attributable to error of fact under Articles 1821, 1823, 1826, 1845 and 2529 of the Civil Code.
Further than this, in view of plaintiff's alternative charge that the Babins "deliberately misrepresented the legally collectible rentals to the petitioner with the intent and purpose to defraud * * *", the petition discloses a case of nullity resulting from fraud under Article 1847 of the Civil Code, as the false assertion forming the ground of complaint was not one as to the value of the object of the contract which is given special consideration under paragraph 3 of the Article.
It is also contended by the Babins that plaintiff's petition does not state a cause for rescission because there is no mention of collectible rental of the apartments, or warranty thereof, in either the act of sale by which they transferred the property to the French Market Homestead Association or in the transfer by the latter to plaintiff. This point is based on the premise that, since the alleged misrepresentation is not contained in the formal act of transfer, plaintiff will be unable to prove the charges in her petition, as parol evidence is inadmissible to contradict or vary the recitals of the act. Articles 2236 and 2276, Civil Code.
We find no merit in this argument. It is settled that the parol evidence rule is incognizable where fraud or error is alleged. Templet v. Babbitt, 198 La. 810, *881 5 So.2d 13, Baker v. Baker, 209 La. 1041, 26 So.2d 132 and Sylvester v. Town of Ville Platte, 218 La. 419, 49 So.2d 746.
It is further argued that plaintiff is without a cause of action against the Babins because she did not purchase the property from them but from the other defendant, French Market Homestead Association.
This proposition is unrealistic. The fact is that plaintiff negotiated with the Babins with whom she entered into a written contract of sale and purchase of the real estate in question, subject to a homestead loan and other conditions. The sale by the Babins to the homestead and the resale on the same day by the homestead to plaintiff was solely for the purpose of securing to the homestead a vendor's lien in accordance with law. Section 50 of Act 140 of 1932, LSA-R.S. 6:766. There is nothing in our recent decision in Hausler v. Nuccio, 214 La. 1069, 39 So.2d 734, relied on by defense counsel, which militates against this view.
On the other hand, we are of the opinion that the trial judge correctly sustained the exception of no cause of action as to the defendant, French Market Homestead Association. Plaintiff, recognizing that the homestead acted in good faith and that it is entitled to full payment of its vendor's lien and mortgage upon the property, alleges merely that, in view of the indebtedness, the homestead is a necessary party to the suit in order that a full accounting can be had between the parties in the event the prayer for rescission is granted. But, as a matter of fact, the homestead is neither an indispensable nor is it a proper party to the action. In its role as holder of a vendor's lien and mortgage note on the property, it is interested only in the repayment of its loan in full. Plaintiff, and not the Babins, incurred the obligation and placed the encumbrance upon the property. Hence, in the event of judgment ordering a rescission, the decree must necessarily be conditioned upon the removal by plaintiff of the mortgage in favor of the homestead as it is her duty, in conformity with the nature of her action, to restore the status quo in order to obtain relief.
The judgment appealed from, insofar as it dismisses plaintiff's suit against French Market Homestead Association, is affirmed. In all other respects the judgment is reversed, the exceptions of Mr. and Mrs. Albert John Babin are overruled and the case remanded for further proceedings according to law and consistent with the views herein expressed. The costs of appeal incurred by plaintiff are to be paid by Mr. and Mrs. Babin and award of all other costs are to await further proceedings. The right to apply for a rehearing is reserved to those parties adversely affected by this decree.
HAMITER, J., concurs in part and dissents in part for the reasons assigned on the original opinion.