79 So.2d 578 (1955)
Mr. & Mrs. Ernest RODRIGUEZ
v.
Merlin George HUDSON, Sr.
No. 20402.
Court of Appeal of Louisiana, Orleans.
April 11, 1955.
Rehearing Denied May 9, 1955.
*579 Midlo & Lehmann, New Orleans, for plaintiffs and appellees.
G. Harrison Scott, New Orleans, for defendant and appellant.
McBRIDE, Judge.
Mr. and Mrs. Ernest Rodriguez seek to recover from Merlin George Hudson, Sr., from whom they purchased the property 8900-02 Apple Street in the City of New Orleans, on January 14, 1953, the sum of $193.50 plus "a reasonable attorney's fee to be fixed by this Honorable Court." The amount $193.50 is the alleged estimated cost of correcting certain defective plumbing beneath the kitchen sink; plaintiffs allege that the defects existed, to the knowledge of defendant but without knowledge on their part, at the time they purchased the property. After hearing the case on its merits, the trial judge dismissed plaintiffs' demands as of nonsuit; defendant has appealed and contends that the suit should have been dismissed without qualification. Plaintiffs have answered the appeal and seek to recover a judgment as prayed for in their petition.
Plaintiffs contend that the condition of the plumbing constitutes a violation of the safety and sanitary regulations of the Sewerage & Water Board of New Orleans.
The controversy resolves itself into this: whether an S trap for the outlet for waste water from the sink meets the requirements of the Water Board. On that point we have the uncontradicted testimony of F. G. Fischer, supervisor of plumbing for the Sewerage & Water Board, to the effect that such trap does not conform to the rules and regulations of the Board, which make the requirement that the sink be equipped with what is known as a P trap. This witness took pains to depict on a diagram the difference between the two types of traps, and we gather from the sketch and the testimony that an S trap is a continuation of the waste leg downward rather than horizontally. In other words, an S trap is vertical, whereas a P trap runs horizontally. The P trap, it is said, is absolute insurance against sewer gases entering the premises.
There is no question that on January 14, 1953, when the defendant sold the house to plaintiffs that he was fully cognizant that the sink was not equipped with the proper trap. He had been previously notified to that effect on several occasions in writing by the Sewerage & Water Board, but notwithstanding this he took no steps, nor made any attempt, to rectify the condition and designedly neglected to declare it to his purchasers who were entirely ignorant of the defects and purchased the house believing that the plumbing, as well as other fixtures therein, was in good and satisfactory condition.
Defendant's counsel contends that the S trap was but an apparent defect such as the buyers might have discovered by simple inspection, and that therefore, it is not among the number of redhibitory vices. LSA-C.C. 2521. We do not believe that the condition of the sink outlet can be said to be an apparent defect, for the simple reason that the plumbing to all appearances was in good condition upon plaintiffs' inspection but was in fact defective in that it had been installed contrary to certain regulations of the Sewerage & Water Board, of which plaintiffs had no knowledge or notice and which rendered the sink absolutely useless. LSA-C.C. art. 2520. This case is not in anywise similar to Wilfamco, Inc., v. Interstate Electric Co., 221 La. 142, 58 So.2d 833, 834, which is cited and heavily relied on by defendant and in which the alleged defect was that the electric circuits were overloaded. The evidence showed this circumstance to have been caused by the use of multiple extensions by a tenant of the vendor. The Court concluded that the overloading of the circuits was not a defect in the electrical system in the sense of a redhibitory vice *580 contemplated by the codal provisions, but was actually only a hazard created by the use of excessive equipment in the existing system which could have been remedied by withdrawing the excess appliances. In the present case, however, there was an actual physical defect; the plumbing not only did not meet the requirements of but had been condemned by the Sewerage & Water Board which has full power and authority to adopt and enforce regulations respecting the installation and maintenance of plumbing fixtures in the City of New Orleans.
Therefore, the conclusion must be that the defendant is liable for the cost of correcting the sink outlet.
In Wilfamco, Inc. v. Interstate Electric Co., supra, it was said:
"The action quanti minoris or for reduction in the price is proper when the thing sold is so defective that it is useless and altogether unsuitable for its purpose or when the defect is such as to diminish its value. Articles 2520 and 2541, Civil Code. Under the jurisprudence of this state, the cost of repairs necessary to make the thing whole is the proper measure for reducing the price. De Armas v. Gray, 10 La. 575; Tuminello v. Mawby [220 La. 733], 57 So.2d 666; Morehouse Ice Co., Inc., v. Tooke & Reynolds, La.App., 154 So. 402." See also Mattes v. Heintz, La.App., 69 So.2d 924.
But unfortunately for plaintiffs they have failed to show with the exactness required by law the amount of damages they sustained through the defective condition of the premises, and the judgment of nonsuit was the only proper one which could have been rendered by the trial judge notwithstanding defendant's contention that the evidence warrants a complete dismissal of the suit. A plaintiff who fails to establish his claim from an insufficiency of evidence he may afterwards be able to supply will be nonsuited and not concluded by a final judgment. 10 Dart's New La. Dig. p. 44, § 51.
Plaintiffs placed on the witness stand A. S. Chevis, a master plumber who made an inspection of the premises some months previously. Chevis said he submitted to plaintiffs an estimate of $193.50 for correcting the trap, but he could not state whether his estimate correctly reflected the cost of the work as of the trial date. With frankness he mentioned that the estimate was intended to hold good for not more than thirty days. The witness's recollection of the premises seemed to be hazy and when asked what work was necessary stated:
"Well, I don't know, unless I could remember the job to draw you a diagram. I couldn't very well answer that question. If it was fresh in my memory, I could draw you a diagram; but I might say now that I wouldn't take the job for that price without re-estimating it now. It may be cheaper and it may be more."
Plaintiffs allege that upon receiving persistent notices from the Sewerage & Water Board as to the violation of its regulations, they deemed it necessary to employ a firm of attorneys to represent them in carrying on negotiations with the Water Board for the purpose of forestalling any criminal action against themselves and also to prosecute the instant suit against defendant. Then follows the allegation "for which services said firm * * * should be allowed a reasonable attorney's fee to be fixed by this Honorable Court." Insofar as the claim for the fee for prosecuting this suit is concerned, plaintiffs cannot recover as the jurisprudence is well established to the effect that a plaintiff as a rule is not entitled to collect his attorney's fee from defendant merely for being successful except where the obligation to pay the fee is imposed by statute or stipulated for by contract. Winkler v. Ascension Bank & Trust Co., 182 La. 69, 161 So. 23. Neither can there be a recovery of a fee for such services as may have been rendered by the attorneys in negotiating on plaintiffs' behalf with the Sewerage & Water Board for, even assuming that an attorney's fee is an allowable item under *581 LSA-C.C. art. 2545, there was no allegation made in the petition as to the amount of the fee nor is there any proof whatsoever as to what expenses in the form of attorneys' fees were incurred by plaintiffs. There are some cases in our jurisprudence which hold that the court is authorized to fix the fee of an attorney as damages in certain types of cases, but in each and every one of those cases the legal services were performed under the eye of the court and therefore the court was in a position to evaluate their worth. But that is not the instant situation. The attorneys performed no services in a judicial proceeding, and it would be impossible for this or any other court to fix with any degree of certainty an appropriate fee for whatever efforts the attorneys might have put forth on behalf of plaintiffs.
The judgment appealed from is affirmed.
Affirmed.