351 So.2d 229 (1977)
Linda Altenberg VERLANDER, wife of/and Richard G. Verlander, Jr.
v.
Raymond L. HOFFER.
No. 8418.
Court of Appeal of Louisiana, Fourth Circuit.
October 12, 1977.
Rehearings Denied November 10, 1977.
Writs Refused January 11, 1978.
*230 Polack, Rosenberg, Rittenberg & Endom, Franklin V. Endom, Jr., New Orleans, for plaintiffs-appellants.
Parlongue & Riegel, Philip R. Riegel, Jr., New Orleans, for defendant-appellee.
Before SAMUEL, LEMMON and BEER, JJ.
BEER, Judge.
This is a quanti minoris action brought by the purchasers of a home with a leaky roof which, they allege, constituted a redhibitory vice. On July 21, 1975, appellants Mr. and Mrs. Richard G. Verlander purchased a 25-yearold house, with its original roof still, apparently, intact, from appellee, Raymond L. Hoffer. Very soon after the sale, during a siege of heavy and repeated rainfall, appellants discovered numerous leaks in the roof. The cause of these leaks was found by the trial court to result from deterioration of the roofing felt paper, which had developed over a period of years and existed at the time of the sale to appellants. The trial judge further found that the condition could not have reasonably been detected upon inspection, and that both parties had dealt with each other in good faith.
Appellants obtained several estimates and then accepted the lowest bid for replacement of the roof at a cost of $3,295.00. Since that particular bid provided that the *231 original 60 pound weight felt roofing paper was to be replaced with 30 pound weight, appellants contracted for the application of an additional layer of 30 pound weight paper, and also a drip edge to prevent water from being blown up under the roofing materials. These "extras" cost an additional $440.00, bringing the amount actually expended to $3,735.00.
The trial judge awarded $1,500.00, being of the view that such was the amount by which the parties would have adjusted the price of the house had they known of the true condition of the roof prior to the sale.
From this judgment, appellant appeals, seeking an increase to $3,735.00.
Appellee answers the appeal, contending trial court error in finding a redhibitory defect entitling appellant to any judgment. Alternatively, he contends that even if a redhibitory defect existed, damages should be limited to the cost of repairing the old roof ($1,200.00 according to appellee's expert witness' testimony) and not the cost of total replacement.
The record supports the trial judge's finding that the deteriorated condition of the felt existed at the time of the sale. According to the testimony of Bruner Mallet, an independent roofer, the deterioration had existed for several years. (Tr. 20.) Louis Schwander, proprietor of Orleans Sheet Metal Works and Roofing, testified that such deterioration develops very gradually, and could not have been a recent or sudden development. Additionally, he testified that it was not unusual for such a deteriorating roof to fail to leak for some time, then for a wind from a certain direction, or a spray, or a hard driven rain to set off a series of leaks. (Tr. 56.)
In Goldberg v. Oliver, 212 So.2d 277 (La. App.3rd Cir., 1968) cert. denied 253 La. 649, 219 So.2d 178, the court dealt with a main roof which was old and worn but did not leak at the time of the sale or later, and a flat shingle roof over the back of the house, which did leak prior to the sale of the house. Judgment was rendered for the cost of repairing the leak about which seller knew but failed to disclose to purchaser. Plaintiff had sought to recover the cost of replacing the entire roof which was "a very old one and outlived its useful years." In denying this theory of recovery, the court noted:
"There is no evidence in the record indicating that the main roof of the living area of the house had any leaks at the time of the sale, or that it leaks now.

* * * * * *
"We have found no case which has announced the proposition that a roof on the used home, which is suffering merely from its age and normal wear, is a vice or defect sufficient to warrant the invocation of an action in redhibition." Id., at 278.
Unlike the roof in Goldberg, the roof here is no longer able to serve its intended purpose. While the Goldberg plaintiffs had full reason to know that they were getting an old roof, plaintiffs here had no reason to expect they would get a leaking roof.
Glynn v. Delcuze, 149 So.2d 667 (La. App.4th Cir., 1963), and Di Pietro v. Le Blanc, 68 So.2d 156 (La.App.1st Cir., 1953), are close to the facts of this case. In Glynn, supra, plaintiff purchaser had lived as a tenant in the property he later purchased, and had noticed several defects. However, the leaking of the roof (resulting from broken shingles) was not among the defects he had observed, and he sued in redhibition for the cost of replacing the roof. The court recognized the leaky roof as a redhibitory defect.
Similarly, in Di Pietro, supra, the court recognized a leaky roof as a redhibitory vice, and remarked:
"The fact that the house was four or five years old when plaintiff purchased it is not material to the issue under the cases we have examined, and particularly under cases covering the sale and purchase of used automobiles. We think that a *232 roof of a house should be free from leaks, the same as any other part of the house should be free from defects, and where a seller does not declare them, he is responsible. The roof is just as much a part of the house as the beams and foundation itself. We do not see any difference between a defective second-hand automobile which would not serve the purpose for which it was purchased and a house with a leaky roof." Id., at 159 (citations omitted). Accord, Sallinger v. Mayer, 304 So.2d 730 (La.App.4th Cir., 1974); Russell v. Bartlett, 139 So.2d 770 (La.App.4th Cir., 1961).
The fact that defendant in Di Pietro, supra, as the builder was held to knowledge of the defective roofing and, therefore, was in bad faith, did not dictate the result there. Good faith or lack of knowledge does not preclude recovery in a redhibitory action. La.Civ.Code art. 2531 (as amended by Acts 1974, No. 673, Sec. 1).
Appellants contend that in quanti minoris actions involving real estate, the damages to be awarded are measured by the amount necessary to convert the unsound structure into a sound one. In Lemonier v. Coco, 237 La. 760, 112 So.2d 436 (1959), the Supreme Court of Louisiana observed:
"In a successful action for a reduction of the purchase price the amount to be awarded is the difference, at the time of the sale, between the value of the thing sold in its defective condition and its value as warranted. (Citations omitted.) However, with respect to the sale of realty, unless there has been an immediate resale, the difference is not readily and easily ascertainable. As a consequence, this Court has declared that in such a case the allowable diminution is `the amount necessary to convert the unsound structure into a sound one' (McEachern v. Plauche Lumber & Construction Co., Inc., 220 La. 696, 57 So.2d 405, 408) or, as otherwise expressed, `the cost of repairs necessary to make the thing whole' (Wilfamco, Inc. v. Interstate Electric Company, 221 La. 142, 58 So.2d 833, 834)." Accord, Wilfamco, Inc. v. Interstate Electric Company, 221 La. 142, 58 So.2d 833 (1952); Fraser v. Ameling, 277 So.2d 633 (La.1973); Rodriguez v. Hudson, 79 So.2d 578 (La.App.4th Cir., 1955); McEachern v. Plauche Lumber & Construction Co., Inc., 220 La. 696, 57 So.2d 405 (1952).
Further, appellants contend that the cost of replacement is an appropriate amount to award if any lesser repair will not convert the unsound structure into a sound one, citing Glynn v. Delcuze, supra, and Di Pietro v. Le Blanc, supra, where, in each case, the respective courts found that the roofs could not be repaired and had to be replaced.
In basing its award on the amount by which it felt the parties would have adjusted the purchase price had they known of the vice, the trial court made the following observations:
"I make the following factual finding, that the house at the time of the sale was approximately twenty-five years old; that the original roof was still on the house at the time of its purchase by the plaintiffs; and that he was aware of the age of the house, and the fact that it was the original roof.
"I also find there was no representation to the contrary to him by anyone, nor any representation to him concerning the condition of the roof, specifically, as opposed to the house, generally.
"I find as a fact, also, that the roof did not leak prior to the sale. However, I also find that the testimony preponderates in favor of the fact that the felt paper on the roof was in a deteriorated condition at the time of the sale as well as after, when the city was inundated with rain in the summer of 1975. I find that that was the quality of it when sold, which was not known to either the buyer or the seller. Both of them knew it was an old roof and subject to deterioration, but neither knew that it was, in fact, in the deteriorated condition that it was. I *233 find that that condition was not discoverable by just a normal inspection of the premises, and indeed, had never been discovered by either the buyer or seller.
"I find both of them in absolute good faith in their dealings one with the other, and that the roof was in the condition, that it was simply about to go when we had very unusual rainfall which did occur shortly before and shortly after the sale.
"I find, therefore, that the plaintiff is entitled to some relief, because I find that if he had known of the quality of the roof at the time that he made the purchase, the purchase would not have been made under the conditions it was without knowledge of that quality.
"On the other hand, I don't find that the plaintiff is entitled to a new roof on the house at the defendant's expense, because I think that if the parties had known that the roof was in the condition it was in, there would not have been an agreement by the parties to simply say I'll give you a new roof.
"I also find, parenthetically, that probably the roof may have lasted for a number of years longer if we had not been inundated with rain; but nonetheless, we were, and it was, in fact, in a deteriorated condition at the time of the sale.
"Under the circumstances, all I can do to adjust between the parties is what I think is a fair adjustment to the price that was paid for the house, recognizing that the plaintiff, having spent $3800, although he could have spent $3200, or indeed, $2400 if he had wanted to take the lesser quality roof that was bid by the party who finally replaced it, that he now has a roof which manifestly is expected to last longer than he could have expected a 25-year old tile roof to last before needing replacement, and under all of these circumstances, I fix the sum, which I think the parties would have adjusted, at $1500, and I'll render a judgment accordingly in favor of the plaintiff."
Obviously, the $1,500.00 award is based upon the trial court's estimation of the differential in the purchase price that would have been precipitated by a mutual prediscovery of the deterioration of the 60 pound felt rather than the actual cost of its replacement.
The Lemonier case, supra, correctly described the general rule for the measuring of damages in a quanti minoris action: they are measured by determining the difference, at the time of the sale, between the value of the thing sold in defective condition and its apparent value as warranted by the seller.
In Lemonier and other cases examined, the vice or defect complained of was faulty construction of some part of a house or other building. Had there been proper construction, deterioration would not have occurred. See, e. g., McEachern v. Plauche Lumber & Construction Co., supra (no footings under piers, inadequate sills, no storm sheeting behind brick veneer, etc.); De Armas v. Gray, 10 La. 575 (1837) (defective construction of brick walls causing them to fall); Glynn v. Delcuze, supra, (improper construction of roof); Rodriguez v. Hudson, supra (faulty installation of plumbing).
The instant case is somewhat different in that the natural deterioration of the 60 pound felt was to be expected, but, as found by the judge, not to the extent which, in fact, existed. Thus, to permit recovery of full replacement cost of a new roof where some deterioration was rightfully to be expected would be an unjust enrichment.
We note that the First Circuit, in Bermes v. Facell, 328 So.2d 722 (La.App.1st Cir., 1976), did not feel bound by the Lemonier measure of damages. There, an old 3½ ton air conditioner which did not adequately cool the house purchased by plaintiff was found to constitute a redhibitory vice. Plaintiff replaced the 3½ ton old air conditioner with a new 4½ ton unit sufficient to cool the house, and costing $1,930.00. A new 3½ ton unit would have cost $1,830.00, yet the trial court, evidently considering depreciation, awarded only $1,350.00. This *234 judgment was affirmed by the First Circuit, which remarked:
"The trial court then awarded $1,350.00 reduction after considering the overall evidence and exercising its limited discretion and setting a reduced sale price at the time of the sale. With this consideration we concur." Id., at 727.
Though this result and that of the trial court decision in the instant case is not within the exact letter of Lemonier and progeny, it is, we believe, within the spirit and, thus, falls within the wide discretion which is the province of the trial judge in setting damages. We make the assumption that the trial court's "bottom line" figure of $1,500.00 takes into account the fact that the various estimates and, indeed, the actual cost of replacing the felt are subject to some modification and/or reduction in order to accomplish a result that does justice to all parties. Accordingly, the judgment is affirmed, at appellants' cost.
AFFIRMED.