410 So.2d 371 (1982)
Ann J. SLAGLE and Elmer C. Slagle, Jr.
v.
Natalie MORGAN and Rex R. Morgan.
No. 12402.
Court of Appeal of Louisiana, Fourth Circuit.
February 9, 1982.
*372 Carl W. Cleveland & Associates, Barbara Treuting Casteix, New Orleans, for plaintiffs-appellees.
Charles W. Nelson, Jr., Reynolds, Nelson & Theriot, New Orleans, for defendants-appellants.
Before GULOTTA, BYRNES and WILLIAMS, JJ.
WILLIAMS, Judge.
This is an appeal from a judgment awarding the plaintiffs, Ann and Elmer Slagle, $3,701.15 for the cost of repairing a house that they purchased from the defendants, Natalie and Rex Morgan, and for attorneys' fees.
On July 19, 1975, the defendants transferred ownership of their home at 5741 Norand Avenue, New Orleans, Louisiana, to the plaintiffs. The transfer was accomplished through a sale to Dryades Savings and Loan Association [hereinafter referred to as "Dryades"] by the defendants and a resale to the plaintiffs by Dryades. On the following day, the plaintiffs began to move into their new home. It was raining at the time, and the plaintiffs noticed that the storeroom roof was leaking. The rain continued for several days during which time the plaintiffs discovered other leaks. More leaks were discovered in the house throughout *373 the course of several months: the kitchen area, the upstairs stairwell, one of the bedrooms, the carport and the overhang above the front door.
After the plaintiffs discovered the leaks, they obtained estimates on roof repairs and eventually had the entire roof replaced. After discussing the situation with the defendants, the plaintiffs eventually filed suit against the Morgans based upon a breach of an express warranty and quanti minoris (redhibition).[1] Judgment at trial was in favor of the plaintiffs, and the defendants have presented several issues on appeal.
BUYER-SELLER RELATIONSHIP
The defendants argued that a redhibitory action must be brought against a vendor, and the plaintiffs, therefore, are precluded from bringing an action against the defendants because the vendor in fact was Dryades.
This argument is totally without merit. In Russell v. Bartlett, 139 So.2d 770 (La. App. 4th Cir. 1961), this court held that an argument such as that presented by the defendants is "unrealistic". Id. at 776, quoting from Overby v. Beach, 220 La. 77, 55 So.2d 873 (1951). The court specifically held that the vendee of a homestead has the right to bring an action in quanti minoris. Id.
Furthermore, the defendants contend that the act of sale whereby the plaintiffs purchased the house contained a specific provision in which the plaintiffs waived their right to bring a redhibitory action. The provision containing the waiver was part of the act of sale between the plaintiffs and Dryades.[2] The waiver of right by the plaintiffs against Dryades in no way operates as a waiver of any right that the plaintiffs have against the defendants.
DEFECTIVE ROOF
The defendants argue that because the roof did not leak at the time of the act of sale it was not defective and that an action in quanti minoris, therefore, will not lie. The defendants contend that this argument is strengthened by the fact that some of the leaks did not appear for several weeks (and in one case, several months).
An action in quanti minoris, which is an action to reduce the purchase price, is governed by the same rules that govern an action in redhibition. La.C.C. arts. 2541 and 2544. In redhibition, a buyer must prove the defect existed prior to the sale. La.C.C. art. 2530. If the defect manifests itself within three (3) days, there is a presumption that it existed prior to the sale. Id. In the instant case, the roof began to leak at various times after the plaintiffs moved in: (a) the leak in the kitchen was discovered within three (3) days of the time that the plaintiffs moved in; (b) the leak in the upstairs stairwell manifested itself approximately one (1) week after the plaintiffs had moved in; (c) the leak in the bedroom became apparent within two or three weeks; and (d) the leak in the carport was discovered several months later.
Evidence presented at trial supports the court's finding that all of these defects existed prior to sale. The roofer who examined the roof testified that the carport roof had been leaking for four to six months. Furthermore, the plaintiffs testified that they were unable to obtain coverage for the damage occasioned by the leak in the bedroom because the leak was considered to be a defect that existed prior to the time that the plaintiffs purchased the home. There was also evidence to indicate that the leak in the upstairs stairwell was extant prior to the sale of the house. There is evidence in the record to support the trial court's conclusion *374 that all of those leaks which manifested themselves after the three (3) day presumptive period as provided by La.C.C. art. 2530 were present at the time of the act of sale. We do not hold that an old roof is one containing a redhibitory defect, nor do we hold that a roof that begins to leak within a short time after sale is always defective. The facts in the instant case, however, indicate that the leaks in the roof existed prior to the sale.
The defendants equate defective with leaking and assert that the roof must be leaking at the time of the act of sale. Following the reasoning of the defendants, a purchaser must hope for rain on the day of the act of sale, or within three (3) days thereafter, because if a leak does not manifest itself at that time, then the buyer will be precluded from bringing an action in quanti minoris or redhibition at a later time. This is not the law in Louisiana. In Hunter v. Wilson, 355 So.2d 39 (La.App. 3d Cir. 1978), the plaintiffs were compensated for a leak that did not manifest itself until two or three weeks after the act of sale. In Buselener v. Peck, 316 So.2d 27 (La.App. 1st Cir. 1975), the plaintiffs had been told that the roof on the house that they had purchased had leaked at one time, but a new roof had been installed. A year after the act of sale, new leaks manifested themselves and it was determined that the roof had not been replaced as had been promised. The plaintiffs were allowed to recover damages in redhibition.
It is clear that a leaky or defective roof is a redhibitory defect which entitled the purchaser to a reduction in price. See, e.g. Russell v. Bartley, supra. In the instant case, plaintiffs have presented evidence, both direct and circumstantial, from which the trial court could reasonably have drawn an inference that the defects existed at the time of the sale. See Womack & Adcock v. 3M Business Products Sales, Inc., 316 So.2d 795 (La.App. 1st Cir. 1975).
REPLACEMENT OF WHOLE ROOF
The trial court awarded the plaintiffs the cost of replacing the entire roof. Defendants argued that because the roof was a "split level" and there was no evidence that the main part of the roof was leaking, that replacement of the entire roof was unnecessary.
In support of their argument, the defendants refer to Goldberg v. Oliver, 212 So.2d 277 (La.App. 3d Cir. 1968). The facts in Goldberg are similar to the facts in the instant case: the plaintiff had purchased a home from the defendant; the roof on the home was in two levels; a leak was found in the roof; and the plaintiff filed suit. In Goldberg, the plaintiffs were only allowed to recover the cost of replacing one portion of the roof, because it was determined that the entire roof was not defective. In the instant case, although the roof was a "split level" as in Goldberg, there is evidence in the record to support the trial court's determination that the entire roof was leaking at the time of the act of sale. There was also testimony by the expert witness on roofing, introduced at trial, that the entire roof was deteriorated to the point that it could not be repaired or replaced in part.
Although the trial court was not in error in considering the necessity of replacing the entire roof, it nevertheless was in error in awarding the total costs of a new roof, as it would result in an unjust enrichment of the plaintiffs.
UNJUST ENRICHMENT
The defendants contended that the trial court erred in awarding the plaintiffs $2,276.15, the entire cost of a new roof.
In Verlander v. Hoffer, 351 So.2d 229 (La.App. 4th Cir. 1977), this court addressed the same issue. The court noted that the general rule for the measurement for damages in quanti minoris action is the determination of the difference between the value of the thing sold in defective condition at the time of the sale, and the value as warranted by the seller. Lemonier v. Coco, 237 La. 760, 112 So.2d 436 (1959) ("[T]he allowable diminution is `the amount necessary to convert the unsound structure into a sound one.'" 112 So.2d at 438).
In Verlander, supra, as in the instant case, the plaintiffs had purchased a home *375 with a defective roof. The court awarded damages, but noted that some deterioration in a roof on an old home is to be expected and, therefore, "to permit recovery or full replacement cost of a new roof where some deterioration was rightfully to be expected would be an unjust enrichment." Id. at 233.
Because the roof on the home purchased by the plaintiffs was ten (10) years old, and evidence at trial indicated that the maximum life of such a roof is fifteen (15) years, plaintiffs were entitled to expect the roof to last, at most, five (5) more years, or one-third of the life of the roof. To award the plaintiffs the entire cost of replacing the roof would allow them to be unjustly enriched as the court held in Verlander, supra. Because the plaintiffs could expect that the roof would last one-third more of its useful life, the plaintiffs should be allowed to recover one-third of the cost of a new roof, or $758.72.
QUANTI MINORIS OR EXPRESS WARRANTY
Confusion has arisen in the instant case over categorization of the legal theory under which the plaintiffs recovered. In the purchase agreement, the defendants expressly warranted that the roof was in good condition. This warranty was given in addition to the implied warranties contained in any sale. La.C.C. arts. 2475-76. The plaintiffs sued the defendants under both theories. The trial court awarded attorneys' fees and stated that there were obvious defects in the house, hidden from view from the plaintiffs. The trial court, however, found that there was no diminution in the value of the property.
It is clear from a reading of the record that the facts presented at trial support both the finding that the house contained redhibitory defects and that there was a breach of the express warranty.
Under an action brought under an express warranty, if the warranty or contract does not specifically provide for attorneys' fees, a plaintiff cannot recover them. Delta Refrig. Co. v. Upjohn Co., 432 F.Supp. 124 (W.D.La.1977); Morein v. G. J. Deville Lumber Co., 215 So.2d 208 (3d Cir. 1968). It is clear from the evidence shown at trial that this action could have been brought either under a theory of breach of express warranty or quanti minoris. Because the evidence presented below supports a determination that a redhibitory defect of which the defendants were aware and failed to disclose existed in the house at the time of the act of sale, the plaintiffs should be allowed to recover for damages and attorneys' fees. The warranty contained in the act of sale does not constitute an express warranty in lieu of redhibition. Furthermore, the plaintiffs have not expressly waived their rights to bring a redhibitory action. See Primeaux v. Bennett Homes, Inc., 339 So.2d 1251 (La.App. 1st Cir. 1976); see generally Guidry v. St. John Auto Exch., 379 So.2d 878 (La.App. 4th Cir. 1980); cf. Hunter v. Wilson, supra (defendant seller made oral assurances prior to the act of sale that the roof would not leak). In PPG Industries, Inc. v. Industrial Laminates Corp., 664 F.2d 1332 (5th Cir. 1982), the court held that "the presence of an express warranty does not convert an action for redhibition into an action for breach of contract". Id. at 536. Accord Molbert Bros. Poultry & Egg Co. v. Montgomery, 261 So.2d 311, 314 (La.App. 3d Cir. 1972).
To limit the plaintiffs' damages to those available for breach of an express warranty, would be to penalize them for the lack of clarity in the reasons given for judgment by the trial court below. Cf. Philippe v. Browning Arms Co., 395 So.2d 310 (La.1981) on rehearing (attorneys' fees awarded in tort action, when facts indicated that a redhibitory action could also have been brought); see generally La.C.C.P. art. 2164. Accordingly, we hold that the plaintiffs should be awarded those amounts recoverable under an action in redhibition where the seller is in bad faith.
ATTORNEYS' FEES AND DAMAGES
Attorneys' fees are recoverable by a plaintiff in redhibition as well as other damages, if it is shown that the seller was aware of the defects at the time of the act *376 of sale. La.C.C. arts. 2544-45. The plaintiffs were awarded $615.00 for repairing the door which was damaged by another leak.
In the instant case, there was evidence introduced at trial that the roof had been patched before. A neighbor also testified that she had seen the defendants repairing and painting over some of the damage caused by leaks over the front door. There was also testimony at trial that the damage caused by the leaks in the bedroom had been painted over so that it was not detectable at the time of the act of sale.
Based on evidence presented at trial, we cannot find that the trial court was in error in determining that the seller had actual or constructive knowledge of these defects. For these reasons, the plaintiffs can recover for damages and for attorneys' fees. See Juneau v. Bob McKennon Chevrolet Co., 260 So.2d 919 (La.App. 4th Cir. 1972).
AMOUNT OF ATTORNEYS' FEES
The trial court awarded the plaintiffs $750.00 in attorneys' fees. The court held that the evidence introduced at trial did not establish a basis for determining the amount of fees to be awarded. Although plaintiffs did file some evidence in the record regarding the legal fees incurred, we cannot say that the trial court did not take this evidence into account in determining that there was no basis for the awarding of attorneys' fees. Therefore, we affirm the attorneys' fees of $750.00 awarded by the trial court and award $400.00 in attorneys' fees as cost of this appeal.
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiffs and against the defendants for $758.72 for the costs of repairing the roof, and $675.00 for repairing the damage caused by the leaks, for a total of ONE THOUSAND FOUR HUNDRED THIRTY-THREE AND 72/100 ($1,433.72) DOLLARS. The judgment to carry legal interest from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiffs and against the defendants for the sum of ONE THOUSAND ONE HUNDRED FIFTY AND NO/100 ($1,150.00) DOLLARS representing attorneys' fees.
AMENDED AND AFFIRMED.
NOTES
[1] The plaintiffs also contended that other defects in the house existed: (1) the plumbing was defective in certain areas, and (2) the shutters had been painted and repaired so as to disguise their deteriorated conditions. The trial court found that these "defects" should have been detected by the plaintiffs prior to their purchase of the home and denied any damages for them. The plaintiffs did not appeal this determination.
[2] We also note that this waiver operates as a matter of law even in the absence of an express written provision. La.R.S. 6:833(E).