304 So.2d 730 (1974)
Karin Tribuleit, wife of/and Stephen E. SALLINGER
v.
Carolyn Clark, wife of/and George Peter MAYER.
No. 6475.
Court of Appeal of Louisiana, Fourth Circuit.
December 10, 1974.
*731 Martzell & Montero, Frank E. Lamothe, III, New Orleans, for defendants-appellants.
Burns & Chasez, Robert J. Burns, New Orleans, for plaintiffs-appellees.
Before SAMUEL, SCHOTT and MORIAL, JJ.
SCHOTT, Judge.
This litigation arose out of the sale of a house in Gretna, Louisiana, by defendants, Mr. and Mrs. Mayer, to plaintiffs, Mr. and Mrs. Sallinger.
On June 7, 1972, Sallinger submitted an offer to purchase for $19,000 containing the following:
"We offer and agree to purchase 2117 Stumpf Blvd., Terrytown Subdivision, Gretna, La., the house, lot and all improvements thereon including shelves in the living room and drapes."
The offer which was presented to the Sallingers' real estate agent was in turn submitted to the Mayers' real estate agent, who in turn presented it to Mayer. Mayer then changed the price of $19,000 to $20,000 and in effect counteroffered to sell the house on the same form which had been submitted to him. In due course, this counteroffer was submitted to Sallinger who agreed to purchase the property for $20,000.
At the time the agreement to purchase and sell was confected there was in the living room of the house a credenza on top of which was constructed book shelves to the height of the room's ceiling. In effect, the combination of the shelves and credenza formed one wall of the living room and separated it from what was being used by the Mayers as a bedroom. On the bedroom side of the shelves and credenza there was paneling from the floor to the ceiling with the other three walls of this bedroom also done in paneling. The house therefore consisted of four bedrooms as it was advertised to contain, counting that portion of the original living room which was divided by the combination of the shelves and credenza.
*732 On the day before the act of sale, scheduled for August 15, 1972, Sallinger visited the premises and discovered that the credenza and shelves had been removed. A complaint was immediately registered with the Mayers' real estate agent and on the day of the act of sale Mayer signed a document which provided as follows:
"We agree to replace shelves in the living room as per agreement to purchase 2117 Stumpf Blvd., Gretna, La., dated June 7, 1972.
"Shelves to be replaced on or prior to August 23, 1972."
Whereupon the act of sale was passed and the Sallingers took title to the property. Shortly thereafter Mayer delivered to the Sallingers' new home five cabinets, whereupon Sallinger notified Mayer that these cabinets were not acceptable. In April, 1973, the Sallingers initiated this lawsuit containing a claim for $3,000 as the alleged value of the shelves. In addition, the Sallingers alleged that in September after a heavy rainfall the roof leaked and was found to require extensive repairs; that the Mayers were aware of the defects in the roof before the sale and failed to disclose them to the Sallingers; and that they were entitled to the cost of replacement of the roof together with attorney's fees.
The trial judge awarded judgment to the Sallingers for $356.68 for the costs expended by them in repairing the roof and $750.00 attorney's fees. He also ordered that the Mayers return and reinstall the original credenza and shelves that were present in the premises on June 8, 1972, and that the Sallingers return to the Mayers the cabinets which were tendered by the Mayers and which were in possession of the Sallingers at the time of the trial.
The Mayers have appealed from the judgment specifying error in the finding that a valid agreement had been struck between the parties regarding the credenza and shelves, in his ordering the return of the objects to the Sallingers and in his awarding judgment to the Sallingers in connection with the defects in the roof of the house.
Beginning with the roof, the evidence shows that the year before the sale of the house the Mayers became aware of the defective condition of the roof and that no disclosure was made by them to the Sallingers of this condition before the sale. When the Sallingers saw the house before the sale there were a number of trees around the house which obstructed a view of the roof from the ground. Only after the Sallingers purchased the house did they learn for the first time of the roof's condition. The evidence shows that the roof's defects were not such as the Sallingers might have discovered by simple inspection under the circumstances, and consequently LSA-C.C. Art. 2521 is not applicable. The only way Sallingers could have discovered these defects was to climb up on the roof and look behind the trees, but the duty imposed upon them by the cited article would not include such a procedure. See Glynn v. Delcuze, 149 So.2d 667 (La.App. 4th Cir. 1963).
In defense against this portion of the Sallingers' claim the Mayers rely upon language in the agreement to purchase and sell to the effect that "Purchaser accepts house in `as is' condition." According to Sallinger and his agent this language was included because the agreement was conditioned upon VA financing and they intended to be bound for whatever repairs the VA might require, but according to Sallinger this was not understood to be a waiver of the Mayers' warranty against the roof defects. In Prince v. Paretti Pontiac Company, Inc., 281 So.2d 112 (La.Sup.Ct.1973) it was held that to be effective a waiver of the implied warranty against hidden defects must be clear and unambiguous and that the evidence must show that the waiver clause was either brought to the purchaser's attention or explained to him. None of these requisites were met in the *733 instant case and consequently the Sallingers did not waive the Mayers' warranty because of the inclusion of the "as is" language in the agreement.
The case falls within the contemplation of LSA-C.C. Art. 2541 entitling the Sallingers to a reduction of the price of the house and of Art. 2545 entitling the Sallingers to attorney's fees, since the Mayers knew that the defects existed and failed to declare them to the Sallingers. The amount awarded to the Sallingers was the cost of the material used by them in repairing the roof. We have concluded that there is no error in the portion of the judgment awarding this amount, as well as attorney's fees to the Sallingers.
But the problem of the credenza and shelves is somewhat more complex. The Sallingers claimed $3,000 as replacement value of these items. The record does not contain evidence of the value of the credenza and shelves which were originally in the house and this apparently led the trial court to grant equitable relief in the form of the order to the Mayers to replace the particular credenza and shelves which had been in the house at the time the Sallingers inspected it in June, 1972, but the record shows that the parties never entered into a binding contract to purchase and sell these particular items, and consequently the Sallingers are not entitled to have these particular items delivered to them.
Sallinger testified that he saw the outside of the credenza and shelves and intended that the entire combination be purchased with the house when he included the word "shelves" in the agreement to purchase and sell. According to his testimony, at no time did he open the doors of the credenza so that he was not aware of its contents. Mayer testified that this credenza contained all of the components of a combination stereophonic radio and phonograph set including the amplifier, the turntable and speakers which were permanently installed in the credenza. His testimony on this point is uncontradicted. Mayer further testified that when he accepted the offer to purchase he overlooked the reference to "shelves" and when the time for the act of sale came with the corresponding difficulty created by his removal of the credenza and shelves he had already committed himself to the lease of an apartment, had already moved his furniture, and was not in a position to have the act of sale fall through. Thus, while he did not feel legally obligated in the premises he agreed to replace the shelves; that is, to provide the Sallingers with a replacement of what he had removed. He further testified that he went back to the house with the intention of measuring the wall and building replacement shelves when he was informed by Sallinger that he wanted the bottom unit to the shelves, namely, the credenza containing the stereo unit. Whereupon, in an attempt to settle the matter, Mayer did purchase and deliver to Sallinger five cabinets which he purchased for approximately $70.00 and which, when lined up, were of the approximate length of the original credenza.
It is apparent from the foregoing that there was no contract to purchase the credenza and stereo set no matter which version of the transaction is accepted as true. Sallinger was not even aware of the presence of the stereo set inside the credenza when he offered to purchase the "shelves." It seems equally clear that Mayer at no time intended to sell his stereo set which, according to his uncontradicted testimony, was permanently built into the credenza. Thus, the trial judge erred in ordering specific performance of a contract which the facts show was never binding since there was never any meeting of the minds between these parties as to the sale of the credenza with the permanently installed stereo equipment.
On the other hand, it seems clear that the Sallingers intended to purchase what appeared to them to be an empty credenza together with the shelves and that *734 Mayer either knew or should have known that a portion of the purchase price for the house was to cover the shelves and credenza. Thus, the Sallingers are entitled to recover from the Mayers the cost involved in purchasing and/or constructing a credenza and shelves of like quality to the ones removed by the Mayers, except for the portion of the credenza's value which was attributable to the permanently installed stereo equipment. Because there is no evidence in the record of this amount the case must be remanded to the trial court for a determination of the issue.
Accordingly, that portion of the judgment which orders the Mayers to return to the Sallingers the original cabinet and shelves is reversed and the matter is remanded to the trial court for a determination as to an amount to which the Sallingers are entitled consistent with the views expressed herein. In all other respects, the judgment is affirmed. The costs of this appeal are to be borne by the Mayers, defendants.
Affirmed in part, reversed in part and remanded.