355 So.2d 39 (1978)
Edwin K. HUNTER, Plaintiff-Appellee,
v.
William F. WILSON, Jr., Defendant-Appellant.
No. 6201.
Court of Appeal of Louisiana, Third Circuit.
January 16, 1978.
Rehearing Denied March 1, 1978.
*40 Joseph Greenwald and W. Ellis Bond, Lake Charles, for defendant-appellant.
Camp, Carmouche, Palmer, Carwile & Barsh, by J. A. Delafield, Lake Charles, for plaintiff-appellee.
Before HOOD, CULPEPPER and FORET, JJ.
HOOD, Judge.
Plaintiff, Edwin K. Hunter, seeks a reduction in the price of a home which he purchased from defendant, William F. Wilson, Jr. He alleges as grounds for his demands that the roof of the building leaked, and that the heating and air conditioning equipment failed to function properly. The trial judge found that the roof was defective at the time of the sale, but that the evidence failed to show a vice in the heating and air conditioning equipment at that time.
Judgment was rendered by the trial court in favor of plaintiff, awarding him $2,845.00 as a reduction in the purchase price. Defendant appealed. Plaintiff answered the appeal, praying that the amount of the award be increased.
The issues are: (1) Was the roof of the building defective and, if so, was that defect apparent to the purchaser by simple inspection? (2) Was the heating and air conditioning equipment in that structure defective and, if so, was the defect of such a nature as to entitle plaintiff to a reduction of the purchase price?
Defendant Wilson owned a residence building in Lake Charles, which was constructed in 1950. He occupied it as his home from the time it was built until he moved out and offered it for sale in August, 1972. On October 16, 1973, after the building had been for sale and unoccupied for over a year, Wilson and Hunter entered into a buy and sell agreement under the terms of which Hunter agreed to purchase the property from defendant. An act of sale was executed by the parties conveying the property to Hunter on October 26, 1973. Hunter moved into the building with his family on November 2, 1973, and he has occupied it as his home since that time.
The home was constructed originally with a "built up" roof, which differs from an ordinary shingle roof in that it is covered with crushed marble, gravel or some type of crushed rock or brick, instead of with shingles. Wilson replaced the entire roof of the building in 1960, and at that time the new roof was constructed in the same manner as was the old one.
After the contract to buy had been entered into, but before the sale was completed, Hunter discovered a leak in the living room of the home near and on the east side of the fireplace, and he immediately called that fact to Wilson's attention. Defendant explained that the leak came from the flashing around the fireplace, and he assured Hunter that the condition would be repaired. Shortly thereafter the sale was completed and defendant began occupying the property.
About two or three weeks after Hunter had moved into the home, a rain occurred and in the course of that rain numerous leaks in the roof began to manifest themselves. Leaks appeared on the west side of the fireplace, and in the living room, the hallway and the bedroom of the house, and they were sufficient to make it necessary for plaintiff to place several pans on the floor in various parts of the house in order to catch the water as it dripped through the ceiling.
Hunter promptly contacted several roofing contractors, who examined the roof and *41 advised him that the roof would have to be replaced. Hunter then obtained bids from three roofing contractors, and he accepted the low bid of one of them, Jerome Korn, to have the roof replaced. Korn performed that work for plaintiff, and Hunter paid him $2,845.00 for the job. The record shows that bids were submitted by the contractors during the latter part of November, 1973, and that the roof was replaced by Korn on or about February 4, 1974.
Plaintiff informed defendant of the defective condition of the roof shortly after the defects were discovered. The record contains a copy of a letter which plaintiff wrote to defendant on December 31, 1973, advising him of the condition of the roof and of the fact that he was having it replaced.
The home which plaintiff purchased was equipped with a central heating and air conditioning unit. The heater was not used much during the winter of 1973, due to the mild weather which prevailed at that time. When plaintiff first used the heater some time after he moved into the house, he noticed an odor of oil being emitted from it, but he attributed that odor to the fact that the unit had not been used for a prolonged period of time. In February, 1974, the heater ceased to function. The fan would not run, and the unit produced no heat. Hunter did not have the heater inspected or repaired immediately after the above discovery was made, but instead, he simply did not use the heating unit during the last part of the winter season. In the summer of 1974, Hunter used the equipment to air condition and cool his home. During that summer he had the heating unit inspected and was advised that the heat exchanger had a crack in it and that the heat exchanger, the fan and the thermostat would have to be replaced. He thereupon had parts of the air conditioning and heating unit replaced or repaired by Moreno's Air Conditioning Service in the fall of 1974, at a cost of $1,279.90.
Hunter then made demand on defendant for a reduction in the purchase price of $2,845.00 for replacing the roof, and of $1,172.00 for repairing the heating unit, making a total reduction of $4,017.00. That demand was rejected by defendant, and this suit was filed on October 25, 1974.
The trial judge found that the roof was defective at the time the sale was completed, and that the defect was of such a nature that plaintiff was entitled to a reduction in the price of the house equal to the amount which he paid to have the roof replaced. He found that the evidence did not support plaintiff's other demands. Judgment was rendered in favor of plaintiff for the sum of $2,845.00. Defendant appealed, and plaintiff answered the appeal.
The law provides that the seller warrants the thing sold against hidden defects. LSA-C.C. arts. 2475, 2476. Hidden defects are those which cannot be discovered by simple inspection. LSA-C.C. art. 2521. If the thing sold has a hidden defect which renders it either absolutely useless, or its vice so inconvenient and imperfect that it must be supposed that the buyer would not have purchased it had he known of the vice, the purchaser may avoid the sale. LSA-C.C. art. 2520. Whether the defect in the thing sold be such as to render it useless, or whether it be such as merely to diminish its value, the purchaser may limit his demand to the reduction of the price. LSA-C.C. arts. 2541, 2542, 2543. In the instant suit plaintiff has demanded only a reduction of the price.
The trial judge found that the roof of the home purchased by Hunter leaked badly at the time of the sale, and that the defect in the roof was sufficient to entitle plaintiff to a reduction of the price. With reference to the roof, the trial judge said:
"Hunter proved the essential elements of the redhibitory action with respect to the roof. The roof was defective. It leaked badly. Its condition was described by three roofing experts who saw it shortly after the purchase. They testified it was in sore need of replacement. Whether it leaked much during the year before the sale is not known; no one lived in it for over a year. It was leaking immediately after the sale. It was thirteen *42 years old, but defendant's expert roofer said that a properly applied "built up" roof will last far longer than thirteen years. This one did not. However, the question is not why the roof was bad, but whether it was bad. The court regards the testimony as conclusively establishing that at the time of the sale, it was a bad roof. It leaked. A leaking roof is a defect. DiPietro v. LeBlanc, 68 So.2d 156 (La.App. 1st Cir. 1953)."
We agree with the trial court that the roof of the home purchased by Hunter leaked badly at the time of the purchase, and that the defect in the roof diminished the value of the building and rendered it so inconvenient and imperfect that it must be supposed that the buyer would not have purchased it had he known of the vice.
A leaking roof on a building is a defective roof, and such a defect may be sufficient to entitle the purchaser to demand a reduction of the price. DiPietro v. LeBlanc, 68 So.2d 156 (La.App. 1 Cir. 1953); Russell v. Bartlett, 139 So.2d 770 (La.App. 4 Cir. 1961); Glynn v. Delcuze, 149 So.2d 667 (La.App. 4 Cir. 1963); Busenlener v. Peck, 316 So.2d 27 (La.App. 1 Cir. 1975); Sallinger v. Mayer, 304 So.2d 730 (La.App. 4 Cir. 1974); Verlander v. Hoffer, 351 So.2d 229 (La.App. 4 Cir. 1977).
Defendant contends that the roof involved here was not defective, that it was merely an "old and worn" roof, and that the condition of the roof did not entitle plaintiff to demand a reduction of the price. He relies on Goldberg v. Oliver, 212 So.2d 277 (La.App. 3 Cir. 1968), where we held that an "old and worn roof, which was not leaking at the time of the purchase, is not a vice or defect under the contemplation of the Civil Code articles on redhibitory actions, where the vendor made no representations whatsoever pertaining to its condition."
In Goldberg, the roof of the house was 12 years old. There was no evidence, however, indicating that the main roof of the building had any leaks at the time of the sale, or even at the time of the trial, although the evidence showed that there was a leak in the flat portion of the roof on the back of the house. The purchaser had a complete new roof put on the entire house at a cost of $1,167.00, of which amount $134.50 was paid to repair the leak in the flat roof in the back of the building. The trial judge awarded plaintiff the full amount which he paid to replace the entire roof. We held that since the roof was merely old and worn, but did not leak, the purchaser was not entitled to recover the cost of replacing the entire roof, but that he was entitled to have the purchase price reduced by the cost incurred in repairing the leak in the flat part of the roof in the rear of the house. We thus reduced the award to the sum of $134.50. We think the rule applied in Goldberg is consistent with that applied in the other cases cited above.
Defendant argues, however, that the condition of the roof in the instant suit was discoverable by a simple inspection, and that plaintiff is not entitled to maintain an action in quanti minoris against defendant because he failed to act as a reasonably prudent buyer, in that he failed to inspect the house and to observe that the roof was "a blatantly old and worn roof."
The evidence shows that plaintiff Hunter did not get on the roof of the house and inspect it prior to the completion of the sale.
The trial judge held that the condition of the roof was not discoverable by simple inspection. In that connection the trial court said:
"The condition of the roof was not discoverable by simple inspection, and therefore, it was a hidden defect. The fact that one leak appeared before the sale did not charge the purchaser with the knowledge that the whole roof was bad. Hunter was assured that this leak was repaired. A layman could not have looked at this roof before the purchase and known that it was going to leak. Foremost among the witnesses to testify thusly was defendant's own expert, "Chick" Schexnider, who said the condition of built up roof is especially hard to evaluate. He himself could not testify whether *43 it was bad or not, since he had never seen it. Even after he was shown excellent photographs taken by plaintiff's father-in-law, he said he was still uncertain about its condition and that he would have had to examine the roof itself before he could express an opinion. A layman like Hunter could not have determined its condition by a simple inspection, and therefore, its defects were hidden to him as far as the law is concerned. Similarly, in Glynn v. Delcuze, 149 So.2d 667 (La.App. 4th Cir. 1963) plaintiff knew before the sale that the roof had loose shingles, but he was allowed a reduction in price because the true condition of the roof involved many more defects not discoverable by simple inspection."
We agree with the trial judge that the defect in the roof was a hidden defect, and that it was not discoverable by a simple inspection on the part of the purchaser. An inspection of the roof may have revealed to the purchaser that it was old and worn, but we find that plaintiff could not have determined whether it leaked by getting on the roof and looking at it closely. Even if such a procedure would have revealed leaks in it, we do not believe that the purchaser has the burden of making that type of inspection. See Glynn v. Delcuze, supra; Sallinger v. Mayer, supra; and Kozlowski v. Fowler, et al., 71 So.2d 246, La.App. (Orl.1954).
Our conclusion is that plaintiff is entitled to recover from defendant the amount which he was required to pay to replace the roof of the house. We find no error in the award of $2,845.00 made by the trial court for that part of plaintiff's claim.
We turn now to the question of whether the trial judge erred in rejecting plaintiff's demands for a reduction in price because of alleged defects in the heating equipment.
The evidence shows that the heating equipment was functioning at the time of the sale. The home was conveyed to Hunter on October 26, 1973, and he moved into it a few days later, on November 2. He used the heater thereafter for a period of approximately three months, until it ceased to function in February 1974. An inspection of the heating equipment was made several months later, during the summer of 1974, and it was discovered at that time that the heat exchanger was cracked. Assuming that a crack in the heat exchanger constitutes a vice or defect which ordinarily would entitle the purchaser to a reduction in price, we find that the evidence here fails to show that that defect existed at the time the sale was made to Hunter. The fact that the heater emitted an oily odor when it was used for the first time does not establish that the heating equipment was defective at that time.
Even if the evidence should be held to establish that the heat exchanger was defective at the time of the sale, we agree with the trial court that it nevertheless is not sufficient to entitle plaintiff to a reduction in price because of that defect.
The trial court found, and we agree, that in the fall of 1974, plaintiff had the summer air conditioning parts of the equipment, as well as the heat exchanger, replaced. The evidence shows that there were no defects in the summer air conditioning parts of the unit. Plaintiff, in fact, used the equipment to air condition his home during the summer of 1974. The person who replaced those units was not called as a witness, and the record does not contain a statement from him indicating how much of his charges related to replacing the heat exchanger. In concluding that the evidence was not sufficient to justify an award for defects in the heat exchanger, the trial judge said:
. . . "Although plaintiff introduced in evidence the invoice of the air conditioning and heating specialist to show the expense of replacing the entire system, plaintiff did not call that specialist, or anyone else, to testify. The court must conclude that at least with respect to the air conditioning function of the system, it was old age alone that justified its replacement. We have seen earlier that old age alone is not a redhibitory defect. Plaintiff is accordingly not entitled to recover for the air conditioning *44 and since he has offered no evidence upon which an award for the lesser amount which replacement of the heater function alone would have cost, no award can be granted for the heater function even if a redhibitory defect existed at the time of the sale."
Our conclusion is that the evidence fails to establish that the heating equipment in the home which plaintiff purchased was defective at the time of the sale. Assuming that it was defective at that time, however, we agree with the trial judge that the evidence fails to show how much expense was incurred in repairing the heating unit. Under those circumstances, we find no error in the judgment of the trial court which rejected plaintiff's demand for a reduction in price because of alleged defects in the heating unit.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
AFFIRMED.