386 So.2d 967 (1980)
Bain D. SLACK and Joseph W. Greenwald, Plaintiffs-Second Appellant,
v.
James H. INGLEHART[1] and Huey Ray Andrus, Defendants-First Appellant.
No. 7604.
Court of Appeal of Louisiana, Third Circuit.
May 21, 1980.
*968 Camp, Carmouche, Palmer, Barsh & Hunter, A. J. Gray, III, Lake Charles, for defendants-appellants-appellees.
McClain, Morgan & Greenwald, Joseph W. Greenwald, Lake Charles, for plaintiffs-appellees-appellants.
Before CULPEPPER, CUTRER and DOUCET, JJ.
CUTRER, Judge.
Plaintiffs, Bain D. Slack and Joseph W. Greenwald, seek a reduction in the price of a commercial building purchased from defendants, James H. Iglehart and Huey Ray Andrus. Plaintiffs alleged as grounds for their demands that the roof of the building leaked, that the air conditioning and heating equipment failed to function properly and that the plumbing system failed. The trial judge awarded damages to the plaintiffs in the amount of $5,448.65. Defendants appealed seeking a reduction in the award. Plaintiffs appealed seeking an increase in the award.
The defendants were owners of a commercial office building which they had purchased in 1974. The offices were rented to several businesses. On October 11, 1977, plaintiffs and defendants entered into a buy and sell agreement. On December 12, 1977, the sale of the property to the plaintiffs was consummated. The plaintiffs continued leasing the offices to various business occupants.
Plaintiffs allege that approximately one month after the purchase the roof began leaking and the sewer system began malfunctioning. Plaintiffs also allege that, at a later time, a problem developed with the air conditioning system. Demands were *969 made by the plaintiffs for the defendants to remedy the problems. A controversy developed and the parties were unable to resolve the problems of repair or replacement arising out of the complaints. This suit followed. The trial court judgment of $5,448.65 consisted of $1,500.00 for the value of roof repairs, $3,387.00 for sewerage replacement costs, and $561.65 as reimbursement for an air conditioning unit purchased by the plaintiffs.
The issues presented by the appeals of plaintiffs and defendants are whether the trial judge erred in making the respective awards for roof repairs, sewerage replacement and cost of an air conditioning unit.

ROOF REPAIRS
Approximately one month after the purchase of the property, the plaintiffs began receiving complaints from tenants concerning leaks in the roof and sewerage malfunctions. On January 23, 1978, Greenwald wrote a letter to the defendants complaining of the roof and sewerage problems. In reply to this letter, Iglehart, on January 30, 1978, promised to repair the roof as soon as weather permitted. He also stated that he had asked co-defendant Andrus to remedy the sewerage situation as soon as possible.
Plaintiffs, however, had roof repairs made on January 25th and January 30th at a cost of $250.00. Defendants also made additional roof repairs on February 20, 1978. Following these repairs, the roof continued to leak. No other repairs were made.
Plaintiffs contend that the trial court erred in awarding $250.00 for the cost of repairs previously made by plaintiffs, plus an additional $1,250.00 for the estimated cost of further repairs. Plaintiffs contend that they are entitled to the replacement cost for the entire roof in the amount of $5,350.00.
Defendants contend that plaintiffs are not entitled to any estimated cost of further repairs. They further contend that plaintiffs are not entitled to the replacement cost of the roof because the warranty agreement of the parties contained in the buy and sell instrument excluded the replacement of the entire roof.
The agreement between the parties contained the following warranty agreement:

"Conditioned upon Purchasers obtaining suitable financing within 30 days from date of acceptance, and the cooling and heating unit and system is in good condition, and the roof with all its components are in good condition and the property is zoned for commercial use. Vendor expressly warrants the cooling and heating unit and system and the roof for a period of One (1) year from the date of final sale, in addition vendor will reimburse vendee for any water damage to the building discovered within One (1) year of the date of final sale. Vendor will make necessary repairs to damaged or broken items only. Example; Should the roof leak, Vendor will remedy same, but will not replace the entire roof." (Emphasis ours.)
Jerome Korn, an experienced roofing contractor, testified that he had inspected the roof on two occasions. He inspected the roof in the Spring of 1978 and again in January of 1979. He testified that he would not recommend repair of the roof by patching same. He stated that he "could not guarantee" any repair work and for that reason recommended replacement of the entire roof which he estimated the cost as being $5,350.00. He also stated that he felt that the costs of repair would approach the cost of replacement. He did not give an estimate of the repair costs.
In his reasons for judgment the trial judge pointed out that the roof was 20 years old. He found that both parties had taken the roof condition into consideration when they entered into the purchase agreement. The trial judge concluded that the plaintiffs were not entitled to the cost of a new roof, but were entitled to the $250.00 previously paid for repairs plus an additional sum for repairs that were needed within the one year warranty period, for which he awarded $1,250.00.
*970 We agree with the award of the trial judge. The agreement between the parties limited the warranty of the seller to only necessary repairs of roof occurring within one year. The parties are free to limit or diminish, by express agreement, the warranty imposed by law. See LSA-C.C. art. 2503.[2] Based upon the testimony of the tenants as to the leaks that took place after repairs were made, the trial court concluded that the repairs needed within the one year warranty period to be $1,250.00. We find no error in this regard.
The plaintiff cites the case of Hunter v. Wilson, 355 So.2d 39 (La.App. 3rd Cir. 1978), as authority for his contention that he should get the cost of a new roof. The Hunter case is inapplicable. That case contained no express limitation of warranty as was contained herein. The law of implied warranty applied in Hunter and the plaintiff was awarded the price of a new roof.
We will affirm the trial court award herein for roof repairs.

SEWER PROBLEMS
Shortly after the purchase of the building plaintiffs received complaints of sewer failure. It was determined that this was due to the collapse beyond repair of the sewer pipes. The sewer pipes were of bituminous fiber pipes known as "Orangeburg" pipe. This pipe was installed when the building was constructed in 1957. After receiving the complaints of plaintiffs, defendants agreed to remedy the problem, but failed to do so. The sewer pipe was entirely replaced by the plaintiffs. The work was performed at plaintiffs' request by Pistol's Plumbing and Maintenance, Inc. This contractor also replaced water service and air conditioning drains and vents to meet the City Code requirements.
The amount charged for the plumbing work was $4,375.00. Since Donald Richard, owner of Pistol's Plumbing and the only person able to specify the cost of the various items of work, was not available to testify, it was agreed by the parties that plaintiffs would be allowed to submit an itemized statement of the sewerage repairs without the necessity of his testimony.
By a letter dated February 20, 1979, the plaintiffs submitted Richard's itemized statement to the trial judge. The statement reflected the cost to replace the sewer lines at $3,387.00. The cost to replace the water service was $360.00. The cost to install proper drains and vents for the air conditioning system was $628.00. In his written reasons, the trial judge awarded the $3,387.00 for the replacement of the sewer pipes.
Defendants contend that the trial judge erred in this award for several reasons.
First, defendants complain that the sewer did not contain a latent defect. They contend that since the sewer did not back up prior to or at the time of sale it was not a latent or hidden defect. This argument is without merit. It is quite clear that the sewer system failure occurred due to massive deterioration of inferior pipe which had been banned by the building code for 20 years. The Orangeburg pipe failed shortly after purchase and was clearly no longer able to serve its intended purpose. Collapsed, non-functioning sewer pipe is clearly a defect and constitutes a redhibitory vice. Weber v. Mathews, 367 So.2d 1326 (La.App. 4th Cir. 1979), (leaking gas and water lines were labeled redhibitory vices or defects.) From the evidence regarding the condition of the pipe, the trial court could reasonably infer that the defect leading to the collapse existed at the time of the sale. LSA-C.C. art. 2503.
Defendants further contend that the itemized statement submitted should not have been considered because, allegedly, their counsel did not have an opportunity to examine the document prior to its being filed. This contention is without merit.
Counsel for defendants agreed to the submission of the itemized statement by plaintiffs. *971 Counsel for defendants further stated that he would have no objection to the submission of an itemized statement if it was accompanied by explanations of the various items. The statement was itemized with explanations.
Defendants further complain that the item was not officially filed in the record until August 24, 1979, the day after the written reasons were rendered. Defendants therefore take the position that the trial court erred in considering the statement.
The record reflects that the itemized statement was sent to the trial judge by letter of February 20, 1979, but was not filed in record until August 24, 1979. While a trial judge may generally consider only evidence as produced and properly offered in evidence, and it may have technically been error to consider the itemized statement before it was officially filed with the clerk of court, we find that the error was harmless. Our review of the record indicates that the trial court judgment is correct, that justice has been done, and the error did not affect the merits. Naquin v. Maryland Casualty Company, 311 So.2d 48 (La.App. 3rd Cir. 1975), writ den., 313 So.2d 598 (La.1975). Had the itemization been filed first and then the decision handed down, the result would have been the same.
Plaintiffs complain that the trial judge erred in not awarding the amount required to replace the water system with proper sized pipe and at a proper distance from the sewer line. Plaintiffs also ask for the cost to install a drain and vents for the air conditioning system. Plaintiffs contend that the work done was necessary to meet the building standards set by the City of Lake Charles, therefore, they should be entitled to recover the cost of this work.
The plaintiffs failed to show that the water lines and air conditioning drains were defective and not suitable for their intended purpose. The trial court noted the system was operable. We agree that, although the system did not meet the requirements of the present city building code, it was not unsuitable for its intended purpose.

AIR CONDITIONING
In its reasons for judgment on the air conditioning problem, the trial court stated as follows:
"After hearing testimony it is obvious to the Court that an air conditioning unit serving a tenant (Mr. Reed) failed and defendants conceded that it was their obligation to replace it. The parties conferred on this problem and plaintiffs purchased a window unit which was installed by defendants. Plaintiffs are entitled to be reimbursed for the cost of such unit, which cost was $561.65."
The testimony of Iglehart reflects that the air conditioning problem was discussed by the parties and it was agreed that the defendants would replace the unit in Mr. Reed's office. The trial court apparently accepted this testimony and awarded judgment for the replacement of the portion of the air conditioning system he found to be actually defective. The sum of $561.65 was so awarded. The trial judge thereby rejected the testimony pertaining to the plaintiffs' claim for an entire, new air conditioning system. We find no error in this conclusion.
Defendants complain that the court erroneously allowed recovery for the cost of the air conditioner since it was not claimed as an item of special damages. Defendants' counsel contends that no testimony appears in the record concerning the cost of the unit. We note that defendants' counsel, in fact, on cross examination (Tr. 256) specifically questioned plaintiff Greenwald about the cost of the unit. The record reveals the following:
Mr. Gray: "Didn't that cost $561.65?"

Mr. Greenwald: "That sounds about right, yeah. I don't deny that. I don't have the invoice. I sent my secretary for the invoice and she brings me back the maintenance contract."
Mr. Gray: "That's the amount you told me, though, $561.65 ..."
Mr. Greenwald: "Yeah, that sounds right."

The evidence was entered into the record without objection, thus enlarging the pleadings. *972 American Steel Building Co. v. Brezner, 158 So.2d 623 (La.App. 3rd Cir. 1963).
Defendants further allege that the trial court erred in considering and allowing to be filed in evidence photostatic copies of bills of sale for two air conditioning units. It is contended that the copies were submitted after the case had been submitted for judgment, thus could not properly be considered. We agree that the evidence is not properly in the record since the court did not hold the record open to receive additional evidence on this point. However, such error was harmless as evidence was adduced by defendants' counsel regarding the purchase price of the air conditioning unit. No prejudice then occurred to defendants' case on the merits.
The plaintiffs ask for an additional award of $399.48 for a second air conditioning unit purchased. No evidence of this amount appears in the record except a photostatic copy which was untimely filed. It therefore cannot be considered.
For the assigned reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed one-half against the plaintiffs, Bain D. Slack and Joseph Greenwald, and one-half against defendants, James H. Iglehart, and Huey Ray Andrus.
AFFIRMED.
NOTES
[1] The correct spelling of this captioned name should be: "James H. Iglehart".
[2] LSA-C.C. art. 2503 provides, in part, that:

"The parties may, by particular agreement, add to the obligation of warranty, which results of right from the sale, or diminish its effect; they may even agree that the seller shall not be subject to any warranty."