GUIDRY, Judge.
This is an action in quanti minoris for certain alleged defects in a house purchased by plaintiff, Carol I. Thorton, from defendants, Michael and Deborah Pedersen. Plaintiff sought reduction of the sale price by the amount necessary to repair the following alleged defects:
1. The roof leak and the cost of its repair_$ 500.00
2. A sinking foundation and the cost of jacking up and releveling the house_$ 750.00
3. A malfunctioning septic system and the cost of its replacement _ - 2,800.00
4. Incomplete bathroom vents, and the cost of their extension through the roof_ 300.00
5. Improper connection of drain pipes under the house and the cost of proper connections_ 350.00
The plaintiff also asked for attorney’s fees in the amount of $1,500.00 and damages for mental anguish in the amount of $2,500.00. Defendants denied any defects, reconvened for damages for being sued in the sum of $5,000.00 and attorney’s fees in the sum of $3,500.00, and third-partied Cooley’s Building Supply, Inc. and Leo Romero concerning the roof leak, the sinking foundation and the incomplete bathroom vents.
The trial court rendered judgment in favor of the plaintiff reducing the sale price by the amount of $3,432.64 which was itemized in reasons for judgment as $500.00 for the repair of the roof; $2,800.00 for replacement of the septic system; and $132.64 as proved expenses for repair to the septic system. Judgment by default was rendered in favor of defendants, third party plaintiffs, against Cooley’s Building and Supply, Inc., in the amount of $500.00. Their third party claim against Leo Romero was dismissed. All other demands were denied.
Defendants appealed suspensively seeking reversal or alternatively reduction in the amount awarded plaintiff and reversal of the judgment dismissing their demands against Leo Romero. Neither plaintiff nor the third party defendant appealed or answered the appeal.
The following issues are presented by the appeal of the defendants:
(1) Did the roof leak because of a defect in construction which existed at the time of sale?
(2) Was the septic system servicing the house so defective as to entitle plaintiff to a reduction of the purchase price, and, if so, was this defect made known to the plaintiff prior to the sale?
(3) Was the award for the replacement of the septic system excessive?
*467 (4) Is the carpenter who did the work on the roof liable to the defendants (third party plaintiffs) for the cost of repair?
FACTS
The Pedersens owned a home located in Old Town Bay subdivision fronting on Old Town Road, Calcasieu Parish, Louisiana. The main part of the house is over 50 years old. They lived in the house six years and made an addition to the house after the fourth year and replaced the sewer system. The Pedersens contracted with Cooley’s Building Supply, Inc. (hereafter Cooley’s) for construction of the addition consisting of another bedroom, enlargement of the den and installation of a fireplace. Leo Romero did the carpentry work on the addition.
On March 27,1978, the Pedersens sold the house to Ms. Thornton.
THE ROOF LEAK AND THE COST OF ITS REPAIR
In August, 1978, within five months of the sale, a leak developed in the front part of the living room where the old portion of the ceiling joined the new portion. The roof continues to leak from time to time. No one contests that the roof leaks. A leaking roof is a defect such as entitles the purchaser to demand a reduction of the price. Hunter v. Wilson, 355 So.2d 39, 42 (La.App. 3rd Cir.1978) and cases cited therein.
The question is whether the leak was due to a defect in construction which existed at the time of the sale.
Appellants contend that the court erred in holding that the leak in the roof was caused by a “sink” which was a defect in construction. They contend that the evidence established that the leak was caused by the decayed condition of the roof due to the accumulation of leaves and debrfc on the roof, which occurred subsequent to the sale to Ms. Thornton. To support this theory, defendants rely on the opinion of two young carpenter-contractors, a Mr. Miller and a Mr. Powell. Miller and Powell inspected the roof about two weeks before trial, three years after the first leak appeared. They were unable to detect a “sink” but found an accumulation of leaves and debris in the valley and concluded that this caused rotting of the roof and explained the leaks.
On the other hand, the plaintiff’s expert, the Rev. M.J. Bruney, is a carpenter-contractor with over forty years experience, who examined the roof approximately one year after the first leak appeared. He testified that he found imperfect workmanship in the construction of the roof, in that the attachment of the short and long rafters caused what he described as a “sink” and that the sheeting under the roof had not been carried straight. It was his opinion that during heavy rains and under certain wind conditions, the water would go under the shingles and flashing, and onto the felt .and stay long enough to cause seepage through the roof.
In his reasons for judgment, the trial judge stated that he was impressed by the expertise and impartiality of Rev. Bruney, whereas the defendants’ experts, Mr. Miller and Mr. Powell, were relatively inexperienced. Considering the time of the inspections, the expertise and the credibility of these experts, the court favored the opinion of Rev. Bruney.
The record establishes that this finding is not clearly wrong. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, writ granted, 359 So.2d 1303 (La.1978), 365 So.2d 1330 (La.1978), on remand, 370 So.2d 1262 (La.App. 3rd Cir.1979); Bertrand v. Aetna Casualty and Surety Company, 306 So.2d 343 (La.App. 3rd Cir.1975). Indeed, we find that the record clearly supports the trial judge’s conclusion that there was a defect in the construction of the roof which existed at the time of the sale.
Defendants assert, however, that the court erred in allowing plaintiff to establish cost of repair on redirect examination over objection of counsel. We find no merit in this contention. The record indicates that *468 testimony establishing the cost of repairs was first made without any objection by defendants. In any event, in view of the power of the trial court over proceedings, provided in LSA-C.C.P. Articles 1631 and 1632, there was no error in the admission of this evidence on redirect examination. Wallace v. Pan American Fire & Cas. Co., 352 So.2d 1048, 1055 (La.App. 3rd Cir.1977), writs refused, 354 So.2d 209 (La.1978).
In its reasons for judgment, the trial court stated as follows:

“No evidence was offered regarding the cost of repair of the ceiling. The only item claimed was $500.00 for the repairs to the roof. Rev. Bruney did not make a detailed repair estimate but he was certain that as of the time of his inspection, the very minimum that it would cost in materials and labor to repair the roof was $500.00.”

We will affirm the trial court award for roof repairs.
THE SEPTIC SYSTEM AND ITS REPLACEMENT
In 1975, at the time that the Pedersens added on to their home, Mr. Pedersen and his brother installed a new septic system. This system consists of a 600 gallon septic tank and about 200 feet of field lines which run in an “L” shaped fashion.
Approximately one year prior to selling the house to Ms. Thornton, the Pedersens tried to sell the house to a friend who intended to use FHA financing. Among other things, FHA required that a soil percolation test be run. At the request of Mr. Pedersen, a percolation test of the soil was conducted by a sanitarian with the Calca-sieu Parish Health Department. He left a copy of his report with the Pedersens indicating that there was poor absorption due to clay or inadequate drainage and that the use of field lines was unacceptable. Because of this and other reasons, the sale could not qualify for FHA financing. In spite of the above, the record reflects that the system installed by Pedersen and his brother worked well throughout the time of defendants’ occupancy and was in working order at the time of the sale to Ms. Thornton.
Soon after the sale to Ms. Thornton, she experienced sluggishness with flushing of the commode and draining of water from the bathtub. In November of 1978, the commode overflowed and the contents backed up into the bathtub. A plumber had to be called. Again in January of 1979, a plumber had to be called. At this time, the system had completely broken down and a hole had to be cut in the line and left open to relieve pressure so that Ms. Thornton could utilize her commode and bathtub. This created sanitation and odor problems.
In its reasons for judgment on the septic system problem the trial court stated as follows:

“The ultimate failure of the system was explained by the experts as caused by a combination of three factors. The first is the lack of porosity of the soil. It is heavy clay. Two percolation tests by the Calcasieu Sanitation office show that the soil does not meet minimum standards of porosity and the system cannot be approved. The second factor is the poor drainage condition of this lot. The third is that the field lines are too deep in the ground.

Amilcar Torres, Chief Sanitation officer for Calcasieu Parish, was an impressive witness, and he backed up the testimony of other experts that these were the problems.

The defense says that the system was working and therefore not defective at the time of the sale. Defendants urge that the mere fact that this system could not be approved under the Louisiana Sanitation Code (one percolation test by the Parish health authorities was conducted in 1977, one year before this sale), is not proof of a redhibitory defect. The Court agrees. Merely because a system does not meet the requirements of a government standard, or code, does not mean that it is unsuitable for its intended purpose. Slack v. Inglehart, 386 So.2d 967 (La.App. 3rd Cir.1980). However, this case is not applicable where the underly
*469
ing defect which accounts for the failure of the system to pass a governmental test is the same to which the failure of the system to operate is attributable. Here, one of the several problems that caused this system to quit working is the nonporous nature of the soil.

Another defense is that other similar systems in the neighborhood are continuing to work well although in the same type of soil. This phenomenon was explained by the experts. They declared that a system might work for years despite poor soil conditions, but that once it breaks down it is more than likely due to poor soil conditions and drainage problems, and that for this type of soil an oxidation pond is recommended.

The court accordingly concludes that the proof is sufficient to establish that the septic system suffered from a redhibi-tory defect which became apparent within a reasonable time after the sale under circumstances sufficient to establish that the defect existed at the time of the sale, and the plaintiff is entitled to a reduction of the price, measured by the replacement cost."

We agree with the trial court’s reasons for judgment and its conclusion that the septic system suffered from a redhibi-tory defect which existed at the time of sale.
Defendants next contend that the trial court found that the defect in the septic system was made known to the buyer before the sale, and that such finding is inconsistent with its ultimate conclusion that plaintiff is entitled to a judgment in quanti minoris. In this regard, appellants point to the trial court’s finding that plaintiff was made aware of the result of the 1977 percolation test.
It is true that in deciding the issue of attorney’s fees the trial court did state that it did not believe the plaintiff had borne her burden of proving that the defendants neglected to tell her about the percolation test. However, even though plaintiff had knowledge of the results of the percolation test, this was not equivalent to knowledge that the system was defective. As afore-stated, when plaintiff first acquired the Pedersen house the plumbing system functioned well. It was only after some months that the defect in the system first became manifest.
In sum, we find that the record clearly supports the trial court’s conclusion that the septic system servicing the house was defective; that the defect existed prior to the sale; that the plaintiff was not aware of this defect prior to the sale; and, that the reduction is to be measured by the replacement cost of the system.
Defendants finally urge that the award to plaintiff for installation of a new septic system is excessive, in that the amount awarded includes the cost of a new tank which will be a duplicate of the tank which is presently in place.
The measure of recovery in an action in quanti minoris involving the sale of realty is the amount necessary to convert the unsound structure into a sound one. Lemonier v. Coco, 237 La. 760, 112 So.2d 436 (La.1959). On February 12, 1979, Mr. Cormier, plaintiff’s expert in the field of septic systems, estimated the cost of replacing the defective system at $2800.00. The written estimate was for a 25' X 25' X 5' oxidation pond installed according to Board of Health specifications. It included the installation of a fence, hooking up the sinks to the sewer system and the dirt to be spread in the yard. When Mr. Cormier testified at trial it was some three years later. He could not state for certain whether the estimate included the electrical work or other necessary expenses. Although he did state that $2,800.00 included the cost of a septic tank and pipe, he did not state the separate value of these items. He also stated that the cost today would probably be a good bit more.
The trial court has reasonable discretion to assess damages based upon the facts and circumstances of the case. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971). This legal principle is equally applicable in a suit for quanti minoris.
*470 In the instant case, we find no abuse of discretion. Plaintiff’s evidence clearly establishes the cost of replacing the defective system at $2,800.00. Although this cost estimate includes the cost of a new septic tank the record does not establish that the old tank would be suitable for use in the new system and, if so, the separate cost of such item. In sum, defendant has failed to provide an evidentiary basis for reduction of the award.
THIRD PARTY DEMAND
The third party claim against Romero concerns the $500.00 roof repair item only. Apparently, Cooley’s was judgment-proof and the Pedersens amended their suit to allege that Romero along with Cooley warranted the construction against defects under LSA-C.C. Article 2762. They reassert this claim on appeal.
Romero denies that he was a subcontractor in any sense of the word and asserts that he was merely a carpenter paid by the hour.
The trial judge, in his written reasons for judgment, stated:
"... the Pedersens failed to prove that Leo Romero was a sub-contractor. In fact Romero was simply a hired hand of Cooley’s Building Supply, Inc., who worked by the hour and, although he was paid directly by the Pedersens, this makes no difference in his status. Third party plaintiffs showed the court no authority for holding that a hired hand warrants the construction against defects. The third party claim against Leo Romero must be dismissed....”
The Pedersens have made no attempt to show that Romero was an independent contractor. We agree with the trial court that the facts indicate Romero was simply a hired hand.
At trial, the Pedersens offered no authority and we have found none for applying LSA-C.C. Article 2762 to a regular laborer nor do we believe this article was intended to be applied so broadly. The only jurisprudence cited by the Pedersens is the case of Schamens v. Crow, 326 So.2d 621 (La.App. 2nd Cir.1975). That case involved a contractor and is not authority for holding a laborer liable under LSA-C.C. Article 2762.
For the above and foregoing reasons, the judgment appealed from is affirmed. All costs of this appeal are assessed to defendants-appellants, Michael and Deborah Ped-ersen.
AFFIRMED.