339 So.2d 1251 (1976)
Maurice J. PRIMEAUX, Jr.
v.
BENNETT HOMES, INC.
No. 10912.
Court of Appeal of Louisiana, First Circuit.
November 15, 1976.
*1252 Jeff McHugh David, Victor J. Roy, Baton Rouge, for plaintiff-appellant.
Gerald E. Songy, Baton Rouge, for defendant-appellee.
Before LANDRY, EDWARDS and COLE, JJ.
LANDRY, Judge.
Plaintiff Maurice J. Primeaux, Jr. (Appellant) appeals from judgment dismissing his suit for diminution of the purchase price of a residence and for attorney's fees, because of alleged redhibitory vices existing in the premises at the time of purchase. Defendant herein is Bennett Homes, Inc. (Appellee), builder-vendor of the residence in question. We reverse and render judgment for Appellant.
The principal issue litigated below, is whether a warranty clause in a contract to sell real property constitutes a conventional warranty which insulates the purchaser from the effect of LSA-C.C. Article 2521 which provides that an action in redhibition does not lie with respect to an apparent defect, meaning an imperfection discoverable upon simple inspection.
On January 4, 1974, the parties entered into a "Purchase Agreement and Rental Agreement" pursuant to which Appellant agreed to purchase from Appellee, for the sum of $56,900.00, a certain lot and the residence and other improvements situated thereon. The property in question is located in the Parkview Oaks Subdivision of East Baton Rouge Parish. An affidavit of construction completion was filed by Appellee, builder, on January 2, 1974. Subject agreement further provides for the sale of Appellant's residence to Appellee, said residence being located in Concord Estates, Baton Rouge, Louisiana. Additionally, the agreement stipulated that both acts of sale were to be passed within ten days of expiration of the sixty day lien period applicable to the above mentioned completion notice. The agreement also recited that in the intervening period, each party was to occupy the other's premises as lessee at a stipulated rental charge.
The mentioned agreement contains the following pertinent language:
"The normal one year builders warranty on Bennett Homes' property to commence upon occupancy by Primeaux."
The home purchased by Appellant was commenced by Appellee for resale. During construction Appellant and his wife became interested in acquiring the residence and ultimately decided to purchase. The Primeaux' visited the property almost daily during the remainder of the construction period. At their request, changes were made in the original plans.
Appellant began occupancy of the new home on January 4, 1974, the day the purchase-rental agreement was executed. It had rained the evening before and was raining as Appellant was moving his furniture *1253 into the residence. Due to the hereinafter described condition of the carport, Appellant experienced difficulty in entering and leaving the house without tracking in water standing on the carport in the vicinity of the carport entrance to the house. To alleviate the condition, Appellant placed layers of cardboard on the carport floor in the area of the accumulation. Earl Bennett, a signatory to the contract in question, was present on this occasion. The condition of the carport was pointed out to him and he agreed the condition would be taken care of.
Appellant concedes he inspected the house continuously after he decided to purchase. He also acknowledges that at his request the plan for the front walk was revised to include a step down and an addition was made to the patio area at the rear of the residence. It is acknowledged that the addition to the front patio was the last step in construction and was completed shortly before Appellant moved in.
Between January 4 and March 17, 1974, the latter date being the date the sale was consummated, Appellant noted and advised Appellee of the following defects in the premises: (1) The concrete floor under the covered portion of the carport held rainwater to a depth varying from ½" to ¾; (2) The covered patio area floor had holes some of which were approximately 2" in diameter and ½ deep; (3) The front walk developed a wide crack next to the stepdown which had been added at Appellant's request; and (4) The uncovered area added to the patio floor developed one or two cracks extending across its entire width.
The testimony is in some conflict concerning whether the cracks in the patio floor were noted prior to the act of sale. Both parties agree, however, that the other mentioned defects were called to Appellee's attention prior to the date of sale and that Appellee agreed to make the necessary repairs. Appellee concedes that following the purchase agreement, Appellee agreed to repair all of the defects. It appears that his action arose solely because of the failure of the parties to agree on the manner in which the defects were to be corrected as will hereinafter appear.
Appellant contended below, and reurges here, that the written warranty in the contract constitutes an express warranty against defects in workmanship and materials and that pursuant to such warranty Appellee is obligated to correct the defects regardless of whether they were apparent at the time of sale. Alternatively, Appellant contended he may sue upon an apparent defect because the agreement to purchase obligated him to buy, therefore the urging of a patent defect is the same as a purchaser proceeding under LSA-C.C. Article 2455 which allows a buyer to seek either a reduction in price or abandonment of the sale where the object of the sale is damaged or destroyed in the interval between the consummation of an agreement to buy and the sale itself.
The trial court concluded that because the terms of the warranty provision of the contract to purchase were vague and indefinite, this warranty did not constitute an express warranty in lieu of the implied warranty pursuant to LSA-C.C. Articles 2475 and 2476. The trial court also held that the legal warranty established by Articles 2475 and 2476, above, is applicable herein because it was not expressly waived. Consequently, the redhibition articles apply and Appellant had one year from the date of sale in which to institute his action. The court, however, found that since the defects were patent, the redhibitory action articles were inapplicable. In disposing of Appellant's alternative demand pursuant to LSA-C.C. Article 2455, which allows a buyer to seek reduction in price or abandonment of a sale where the object of the transaction is damaged or destroyed before the sale is consummated, the court noted that LSA-C.C. Article 2544 provides that the action for reduction or abandonment permitted by Article 2455 is subject to the same rules governing redhibition as established by Articles 2475 and 2476, above. On this finding the court held that once the sale is consummated, an action in reduction or price will *1254 not lie with respect to a defect discoverable on simple inspection.
We pretermit all consideration of whether an action in redhibition pursuant to LSA-C.C. Article 2520 or an action in reduction of price conformably with LSA-C.C. Article 2455 lies herein. We do so because we find in this case an enforceable collateral oral contract made between the parties whereby the vendor expressly agreed to remedy the specific defects complained of.
It is well established law that our courts of appeal may render any judgment warranted by the record. LSA-C.C.P. Article 2164. The foregoing statutory provision was intended to abolish the theory of the case doctrine formerly existing under our jurisprudence and which limited litigants to recovery based on the legal theories advanced and to the relief for which he prayed. See Official Revision Comments, LSA-C.C.P. Article 2164; see also Temple v. Liberty Mutual Ins. Co., 316 So.2d 783 (La. App. 1st Cir. 1975); Ohanna v. Ohanna, 129 So.2d 249 (La.App. 4th Cir. 1961).
The record discloses that prior to the sale in question, certain defects were known to both parties. It is also conclusively shown that prior to the sale Appellee unequivocally agreed to remedy those defects which were then known, and that Appellant purchased relying upon Appellee's promises to repair. As previously noted, the only dispute between the litigants concerns the manner in which the repairs were to be performed.
Individuals may enter into any agreement or contract which is not contrary to law, public order or good morals, and which does not affect the rights of third parties. LSA-C.C. Articles 11, 1764. We see no reason why a vendor and purchaser may not enter into a collateral agreement whereby the former obligates himself to repair known defects in the object of the sale. When, as in this case, such an agreement is oral, proof thereof may present problems at trial. In this case, however, no such problem arises in view of vendor's admission that the defects were to be corrected. The codal articles on redhibition, reduction in price and avoidance of a sale, do not proscribe agreements modifying their provisions, they merely regulate the rights of purchaser and vendor in the absence of agreement contrary to their terms. We see nothing contrary to law, public order or good morals which prevents parties from validly contracting that defects known prior to a sale will be remedied by the vendor after the transfer. Under such circumstances, the consideration to be paid by the purchaser supports the promise to repair. We find, therefore, that in this instance Appellee entered into a valid and binding contract to repair known defects. We likewise find that such a contract is subject to the ten years prescriptive period provided by LSA-C.C. Article 3544.
Appellant produced Nolan Fairbanks, contractor, who qualified as an expert in the laying, pouring and finishing of concrete. Fairbanks inspected the premises on three occasions. He determined the extent of flooding under the covered carport area by flooding the area with a hose pipe. He considered the work defectively performed because the surface was saucer shaped instead of being even and sloping away from the house. He attributed this defect to the fact that the forms were not properly set when the area was poured. He also noted indentations in the surface which he found to have been caused by water which bubbled up during the finishing process and which had not been properly finished over. He also found that an area of aggregate slab, poured after the floor of the covered carport was laid, was at a higher elevation than the carport floor and thus the added area acted as a dam impounding water. He noted the accumulation of water varied from ½ to ¾ in depth over most of the carport area and as much as ¾ in the deepest recess of the carport floor. Fairbanks stated the cracks found in the uncovered addition to the patio resulted from the failure to provide expansion joints in that area. The crack in the front walk he attributed to the absence of an expansion joint in the sixteen foot section of the walk involved. He stated there should have *1255 been an expansion joint at an interval of eight to ten feet. Fairbanks recommended removal and replacement of the concrete surface under the carport, the uncovered area of the patio and the front sidewalk. He stated that "capping" the carport to raise its elevation would not result in a satisfactory bind between the present surface and the added capping and there was almost a 100% possibility that capping would crack. Fairbanks gave a detailed estimate aggregating $1,525.40 for the removal and replacement of the defective concrete areas, which estimate we find to be amply supported by his expert testimony.
Robert Aertker, testifying for Appellee, was qualified as an expert in the field of capping or overlaying. He explained that in this instance capping could result in the carport floor being level with or higher than the bottom of the carport entrance doorway. He could not reasonably guarantee that capping would not crack. He did not make a detailed inspection of the carport floor, neither did he determine the precise elevations involved. He gave no details as to the cost of repairs which he estimated at $250.00 and which he conceded came "off the top of his head".
We find Fairbanks' estimate of repair costs to be adequately supported by his professional findings and opinion based thereon. We agree that capping is most likely to produce unsatisfactory results and that the repairs necessary may best be performed in a workmanlike manner by removal of the areas involved and the laying of new concrete surfaces to proper grade and with adequate expansion joints.
Appellant is not entitled to claimed attorney's fees which, as a general rule, are recoverable only when authorized by statute or expressly provided for by contract. Hernandez v. Harson, 237 La. 389, 111 So.2d 320 (1958); Koch v. Louisiana Power & Light Company, 298 So.2d 124 (La.App. 1st Cir. 1974).
While Appellant prayed for damages in the sum of $1,500.00, the record contains proof, offered without objection, of damages in the sum of $1,525.40. LSA-C.C.P. Articles 862, 865, 2164 and 5051 mandate a liberal construction of pleadings to the extent a litigant is entitled to such relief as is justified upon the record, regardless of whether or not the particular relief granted was expressly requested. Budget Plan of Baton Rouge, Inc. v. Talbert, 276 So.2d 297 (La.1973); Cambrice v. Fern Supply Co., Inc., et al., 285 So.2d 863 (La.App. 4th Cir. 1973). Judgment will therefore be rendered in favor of Appellant in the sum of $1,525.40.
It is ordered, adjudged and decreed that the judgment of the trial court be and the same is hereby reversed and set aside; and judgment rendered herein in favor of Plaintiff Maurice J. Primeaux, Jr., and against Defendant, Bennett Homes, Inc., in the full sum of $1,525.40 with legal interest thereon from date of judicial demand, until paid, and all costs of these proceedings.
Reversed and rendered.