MCDONALD, J.
This is an appeal from a ruling granting summary judgment in favor of Entergy Louisiana, LLC (hereafter Entergy) and its insurer, Aegis Insurance Services, Ltd. (hereafter Aegis Insurance), and against Allan Company-Golden Meadow, LLC[1] (hereafter Allan Company), dismissing Allan Company's claims for breach of contract.[2] After a de novo review, we affirm.
FACTS AND PROCEDURAL HISTORY
Allan Company is a family-owned company that owns approximately 1,280 acres of marshland south of Golden Meadow, Louisiana. Louisiana Power & Light Company, the predecessor to Entergy Louisiana, LLC, secured a right of way agreement in 1957 to construct, maintain, and operate an electric transmission line in a 100-foot wide strip across six acres of the property. The transmission line was damaged by Hurricane Katrina. Entergy was using marsh buggies and other equipment to carry out emergency repairs to the transmission line in September 2005 when it damaged Allan Company's property inside of and adjacent to the right of way.
Lafourche Realty Company, Inc. owns neighboring property to Allan Company, and Entergy also has a 1957 right of way agreement with Lafourche Realty Company. Entergy also caused damage to Lafourche Realty Company property during its repair work after Hurricane Katrina.
On September 1, 2006, plaintiffs, Lafourche Realty Company, Inc.[3] and Allan Company, filed suit against Entergy Louisiana, Inc., Entergy Louisiana, LLC (as above, hereafter Entergy), Entergy Holdings Louisiana, Inc., Entergy Services, Inc., Entergy Gulf States Inc.,[4] for damages, *1089 including the cost to restore the marshland. By subsequent amending petitions, Allan Company members Elizabeth Culver Jahncke, Jeannie Culver Dragon, and John A. Culver were added as additional plaintiffs and additional defendants were named, including Aegis Insurance and the contractors and subcontractors that worked on Allan Company's property, Highlines Construction Company, Gray Insurance Company (insurer for Highlines Construction Company), Irby Construction Company, Irby Construction Company of Mississippi, Old Republic Insurance Company (the insurer for Irby Construction Company and/or Irby Construction Company of Mississippi),[5] Marsh Buggies, Inc., Frogco Rentals, LLC, Frogco Amphibious Equipment, Inc., and Alea London, Ltd (insurer for the Frogco companies).[6] The claims included tort, breach of servitude, breach of contract, and detrimental reliance. The property is valued at less than $5,000.00. Allan Company made restoration claims for the property that exceeded $3,000,000.00.
On December 28, 2015, Entergy and Aegis Insurance filed a motion for summary judgment seeking to dismiss Allan Company's claims against Entergy and Aegis Insurance for breach of contract, asserting that there was no genuine issue of material fact that no contract existed that obligated Entergy to restore Allan Company's property to the condition it was in prior to the post-Katrina repair work. Entergy maintained that it acted within its authority under the 1957 right of way agreement, which could only be modified in writing, that there was no such written modification, and that Allan Company's claim for damages was controlled by servitude law. Alternatively, Entergy maintained that if there was a verbal agreement to modify the terms of the right of way or create new obligations to restore the tract to the condition it was in prior to the post-Katrina repair work, such agreement was vitiated by error, duress, or fraud. In support of its motion for summary judgment, Entergy attached numerous exhibits including Entergy's 1957 right of way agreement with Allan Company, Entergy's 1957 right of way agreement with Lafourche Realty Company, Entergy's January 31, 1992 agreement with Lafourche Realty Company to restore Lafourche Realty Company property when damaged by Entergy's use of its right of way, as well as depositions of an Entergy representative, Bruce Brignac, and Allan Company representative John Culver.
Allan Company filed an opposition to the motion for summary judgment, asserting that there was an enforceable oral amendment to the right of way agreement and/or a new enforceable oral contract before Entergy began the transmission line work that included Entergy's agreement to provide full restoration of the property to its previous state. In support of its opposition to the motion for summary judgment, Allan Company attached numerous exhibits, including photographs of the property, assessments of the property damage and repair estimates, the affidavit of John Culver, and the affidavits of Bobby Comeaux and Glenn Plaisance, both representatives of John Plaisance & Sons, Inc. (JP & S), a corporation in Golden Meadow.
*1090 The motion for summary judgment was heard on April 22, 2016. Thereafter, the trial court granted summary judgment in favor of Entergy and Aegis Insurance and against Allan Company and dismissed the claims for breach of contract. The judgment was signed on December 2, 2016. Allan Company appealed that judgment.
THE RULE TO SHOW CAUSE
This court issued a rule to show cause order on June 21, 2017, noting that the December 2, 2016 judgment appeared to be a partial judgment, as it did not dispose of all the claims and issues in the case, and further, the judgment did not contain the designation of finality required by La. C.C.P. art. 1915(B). This court gave the parties until July 21, 2017, to show cause why the appeal should not be dismissed, citing Motorola, Inc. v. Associated Indem. Corp. (Motorola II), 2002-1351 (La. App. 1 Cir. 10/22/03), 867 So.2d 723, 732.
Thereafter, the record was supplemented with the trial court's February 3, 2017 certification of the judgment as final. The rule to show cause was referred to this panel.
The judgment states:
IT IS ORDERED, ADJUDGED AND DECREED that [the] Motion for Summary Judgment filed by Entergy Louisiana, LLC and Aegis Insurance Services, Ltd. to dismiss the breach of contract claims [asserted by Allan Company] is granted and the claims asserted by [Allan Company], LLC for breach of contract are dismissed.
After review, we find that the breach of contract claims are distinct from the claims that have not been adjudicated because they do not involve the same issues. There is little, if any, possibility that future developments in the trial court will moot the need for the appellate court to review the summary judgment dismissing the breach of contract claims. We find that the possibility that the reviewing court will have to review the breach of contract claim a second time is non-existent. See R.J. Messinger, Inc. v. Rosenblum, 2004-1664 (La. 3/2/05), 894 So.2d 1113, 1122-23. Thus, we maintain the appeal.
STANDARD OF REVIEW
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. A summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, i.e., whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. Samaha v. Rau, 2007-1726 (La. 2/26/08), 977 So.2d 880, 882-883.
The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966D(1).
Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can only be seen in light of the substantive law applicable to the case.
*1091 Pumphrey v. Har ris, 2012-0405 (La. App. 1 Cir. 11/2/12), 111 So.3d 86, 89.
SUMMARIZED ASSIGNMENTS OF ERROR[7]
1. The trial court erred in concluding that Entergy was not obligated to repair the damage it caused to the Allan Company's property irrespective of whether Entergy agreed, after contract, to repair the damage.
2. The trial court erred by making credibility determinations, weighing evidence on disputed facts, and failing to evaluate inferences from undisputed facts in the light most favorable to Allan Company.
3. The trial court erred in not finding that Entergy was obligated to use the servitude reasonably, cause the least possible damage, and return Allan Company's property to its original condition so far as reasonably possible.
4. The trial court erred in applying the writing requirement of La. C.C. art. 1839 when the underlying agreement falls within the exception to the writing requirement.
5. The trial court erred in not applying La. C.C. art. 667 and case law concerning the servitude owner's obligation to repair its damage to the property.
6. The trial court erred in excluding from evidence a December 19, 1983 letter from John Culver to Alex Plaisance.
7. The trial court erred in excluding evidence of Entergy's failure to comply with coastal use permit regulations.
ARGUMENTS OF THE PARTIES
Allan Company maintains that a November 1, 1983 Trapping, Fishing, Hunting & Patrol Contract (hereafter the Trapping Contract) with JP & S appointed JP & S as keeper and guardian of the Allan Company property and that Entergy dealt with JP & S representatives for Allan Company. Allan Company maintains that a binding oral agreement was entered into between a representative for JP & S, Bobby Comeaux, and a representative for Entergy, Bruce Brignac, that provided that if marsh buggies were used on Allan Company property, Entergy would restore the Allan Company property afterwards. Allan Company asserts that JP & S represented the neighboring landowner, Lafourche Realty Company, in its dealings with Entergy and that Mr. Brignac agreed with JP & S representative Alex Plaisance that "what goes for Lafourche Realty, also goes for Allan Company" with regard to restoration of property after the post-Hurricane Katrina repair work.
Entergy maintains that the only agreement between itself and Allan Company is the 1957 right of way agreement, which does not restrict Entergy's access to and usage of the servitude with its choice of equipment, and further, does not obligate Entergy to restore Allan Company's property. Further, Entergy maintains that servitude law does not allow Allan Company to restrict Entergy's access to and use of the servitude with the equipment it deems necessary, nor does it require Entergy to restore Allan Company's property. Entergy essentially argues that Allan Company is trying to equate its relationship to Entergy to that of Lafourche Realty Company; however, Lafourche Realty Company has a January 31, 1992 written agreement *1092 with Entergy that provides for Entergy to restore Lafourche Realty Company's property after Entergy causes any damage by using its right of way on Lafourche Realty Company's property, while Entergy does not have a similar written agreement with Allan Company.
APPLICABLE LAW
The establishment of a predial servitude by title is an alienation of a part of the property to which the laws governing alienation of immovables apply. La. C.C. art. 708. Predial servitudes are established by all acts by which immovables may be transferred. La. C.C. art. 722. The owner of the dominant estate has the right to enter with his workmen and equipment into the part of the servient estate that is needed for the construction or repair of works required for the use and preservation of the servitude. He may deposit materials to be used for the works and the debris that may result, under the obligation of causing the least possible damage and of removing them as soon as possible. La. C.C. Art. 745.
A transfer of immovable property must be made by authentic act or by act under private signature. Nevertheless, an oral transfer is valid between the parties when the property has been actually delivered and the transferor recognizes the transfer when interrogated on oath. La. C.C. art. 1839.
1957 RIGHT OF WAY AGREEMENT
The 1957 right of way agreement between Entergy's predecessor and Allan Company provides in part:
Grantor [Allan Company], in consideration of the sum of One Thousand Six Hundred Twenty Seven and 50/100 Dollars ($1,627.50), cash in hand paid, and other valuable considerations, receipt of which is hereby acknowledged, does, by these presents, grant, convey, warrant and deliver unto LOUISIANA POWER & LIGHT COMPANY, its successors and assigns (herein called Grantee), the right, privilege and easement forever to construct, operate and maintain a transmission line, consisting of a single or double line of poles and/or towers, with such wires, cables and other appurtenances thereto as may be necessary or convenient, for the transmission of electric energy and/or
[BLANK LINE IN ORIGINAL]
communications, together with a perpetual Right of Way 100 feet in width with the center line of said transmission line as constructed as the center thereof, and the right to open, clear and maintain said Right of Way and to keep the same clear of underbrush, trees and other obstructions which in the judgment of the Grantee might interfere with or constitute a hazard to the operation of said transmission line, and with the free right of ingress and egress in and from and upon said Right of Way for the purpose of constructing, maintaining, repairing, replacing, operating or removing at will said transmission line and appurtenances thereto upon, over and across the following described lands...
* * * * *
The Grantee shall also have the right and privilege forever to patrol, alter, inspect, improve, repair, and remove such poles, towers, lines, wires, cables, attachments, equipment and appurtenances, including the right to increase or decrease the number of wires, poles or structures, and all other rights and privileges necessary or convenient for the full use and enjoyment of the Right of Way herein granted for the purposes herein described, including the right of ingress and egress to and from said Right of Way over adjoining lands of the Grantor.
* * * * *
*1093 It is stipulated that said line and Right of Way shall never be fenced by the Grantee and that the Grantor shall have full use of said Right of Way and the right to cultivate and otherwise use said Right of Way, except for the purposes for which the same is herein conveyed to the Grantee.
To have and to hold said Right of Way and privileges unto the Purchaser, its successors and assigns, forever, subject to the conditions and limitations and herein contained.
* * * * *
The Grantee shall have the right to remove trees adjacent to said Right of Way which are or may become tall enough to constitute a hazard to the use of said transmission line, and shall pay to the Grantor the value of such trees, as timber, when removed.
TRAPPING CONTRACT
The November 1, 1983 Trapping Contract provides in part:
[Allan Company] does hereby let and lease the said land to [JP & S] for the purpose of trapping, fishing and hunting thereon, and maintaining thereon such camp buildings as may be necessary for the purpose of trapping, fishing and hunting. [Allan Company] hereby gives and grants to [JP & S] such possession, use and occupancy of the lands as may be necessary for the purpose of this lease.
[JP & S] shall post the necessary trespass notices on the above premises and act as keeper and guardian of the property herein described. [JP & S] agrees to patrol the premises regularly for the purpose of possession, and to maintain the property in the best possible order.
ASSIGNMENT OF ERROR NO. 4
In this assignment of error, Allan Company maintains that the trial court erred in applying the writing requirement of La. C.C. art. 1839 when the underlying agreement falls within the exception to the writing requirement.
Allan Company cites Guillotte v. Wells, 485 So.2d 187 (La. App. 2 Cir. 1986), in support of its argument. The Guillotte case concerns an entirely different fact pattern. In Guillotte, the trial court rendered judgment declaring that a pipeline servitude for a domestic gas line was established across the defendants' property by acquisitive prescription in favor of the plaintiff, the neighboring landowner. The judgment also enjoined the defendants from interfering with the plaintiffs' use of the pipeline. The defendants appealed the judgment. On appeal, the Second Circuit held that the defendants' judicial admission and stipulation that one of the defendants had expressly granted permission to plaintiff to lay the gas line in the 1950's was sufficient to establish, under the particular circumstances of that case, by title, a right of use or personal servitude in favor of the plaintiff. Guillotte, 485 So.2d at 188.
Allan Company also cites Miller v. Long Oil & Gas Exploration, Ltd., 542 So.2d 75 (La. App. 3 Cir.), writ denied, 544 So.2d 403 (La. 1989), in support of its argument. In Miller, the plaintiff appealed a trial court judgment dismissing his claim against the defendant, an oil and gas exploration company, for damages for the company's failure to comply with the terms of a written contract that granted the company a servitude of passage to and from an oil well. The trial court ruled in part that, although the servitude did not specify the location of the road, the parties agreed on the location, and that it was more believable than not that subsequent to the confection of the written contract, the parties verbally agreed to a different location for the placement of the pipeline than that *1094 stipulated in the servitude. Miller, 542 So.2d at 76. On appeal, the Third Circuit found that under the narrow exception to La. C.C. art. 1839, it is permissible between the parties for predial servitudes to be established verbally; thus, it follows that as between those parties, a written servitude may also be orally amended. Miller, 542 So.2d at 80.
However, we find that the narrow exceptions to the La. C.C. art. 1839 writing requirement as found in the Guillotte and Miller cases are clearly differentiated from the case herein, as those oral agreements were made between the principals to the servitude. Further, we note that in Miller, the Third Circuit reviewed the deposition testimony of the plaintiff and found that the plaintiff failed to clearly deny the assertion of the servitude owner that there was an agreement to relocate the pipeline. Miller, 542 So.2d at 80.
Allan Company further argues that Entergy made an unconditional promise to repair its damage and that such a promise can function as an obligation separate from the existing servitude obligation as a collateral agreement, citing Suire v. Lafayette City-Parish Consol. Gov't, 2004-1459 (La. 4/12/05), 907 So.2d 37 and Primeaux v. Bennett Homes, Inc., 339 So.2d 1251 (La. App. 1 Cir. 1976) in support of this argument.
In Suire, a homeowner filed suit after installation of metal sheeting at a nearby city project in a servitude caused damage to his home. Among other claims, the homeowner alleged that city representatives orally agreed to repair his damages. Suire, 907 So.2d at 42-43. The trial court granted summary judgment in favor of the city on the breach of contract claim. Suire, 907 So.2d at 44. The Third Circuit reversed that judgment, ruling that genuine issues of material fact on the homeowner's breach of contract claim precluded summary judgment. Suire, 907 So.2d at 47. The Louisiana Supreme Court granted writs to consider the rulings, and determined that the plaintiff had failed to establish the existence of an oral contract or the breach of an oral contract under La. C.C. art. 1846. The Louisiana Supreme Court reversed the third circuit and granted summary judgment in favor of the city on the breach of contract claim. Suire, 907 So.2d at 58. The Suire case concerned contracts under La. C.C. art. 1846, which are not required by law to be in writing and have a value of less than five hundred dollars. Thus, Suire does not support Allan Company's position in this case.
In Primeaux, the buyer and seller of a home entered into an oral agreement that the seller would repair some defects to the concrete patio, carport floor, and front walk. The parties could not agree on the manner in which the defects would be corrected, and the homebuyer thereafter filed suit for diminution of the purchase price, alleging redhibitory vices in the premises. Primeaux, 339 So.2d at 1252-53. The trial court found that the defects were patent, and thus once the sale was consummated, an action for reduction of price would not lie with respect to a defect discoverable upon simple inspection. Id. On appeal, this court reversed the trial court judgment and rendered judgment in the amount of $1,525.40 in favor of the homebuyer, finding that there was an enforceable collateral oral agreement made between the parties whereby the seller expressly agreed to remedy the specific defects complained of by the home buyer. Primeaux, 339 So.2d at 1254-55. Primeaux is differentiated from the present case as it concerned an oral agreement between the principals to the act of a sale of a home. Primeaux does not support Allan Company's position in this case.
Notwithstanding the fact that the alleged oral agreement herein was not between *1095 principals to the servitude and does not fit within the narrow exception to the writing requirement of La. C.C. art. 1839, John Culver, Allan Company's corporate representative, testified in his deposition that the Trapping Contract did not grant Alex Plaisance the authority to restrict Entergy's use of the right of way, to restrict the type of equipment Entergy could use, or to require Entergy to restore the property. Thus, we find no merit to Allan Company's argument that there is an underlying agreement in the present case that falls within the exception to the writing requirement of La. C.C. art. 1839, and this assignment of error has no merit.
ASSIGNMENT OF ERROR NO. 2
In this assignment of error, Allan Company maintains that the trial court erred by making credibility determinations, weighing evidence on disputed facts, and failing to evaluate inferences from undisputed facts in the light most favorable to Allan Company.
As a general rule, a motion for summary judgment is rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge, or good faith. Thus, in motions for summary judgment where a contract is ambiguous and the intent of the parties becomes a question of fact, very often there are conflicting affidavits concerning the intent of the parties, and granting a motion for summary judgment is inappropriate. However, even though granting a motion for summary judgment based on an intent issue may be rare, it can be done when there is no issue of material fact concerning the pertinent intent. Sanders v. Ashland Oil, Inc., 96-1751 (La. App. 1 Cir. 6/20/97), 696 So.2d 1031, 1035, writ denied, 97-1911 (La. 10/31/97), 703 So.2d 29.
On de novo review, we find that Entergy pointed out in its motion for summary judgment the absence of factual support sufficient to establish that there was a contract between Entergy and Allan Company for Entergy to repair damage to Allan Company's property done during the post-Hurricane Katrina repair work on Entergy's transmission line. Thus, the burden was on Allan Company to produce factual support sufficient to establish the existence of a genuine issue of material fact or that Entergy was not entitled to judgment as a matter of law. See La. C.C.P. art. 966D(1). We find that Allan Company failed to produce factual support sufficient to establish the existence of a genuine issue of material fact that there was no valid contract between Entergy and Allan, outside of the right of way agreement, for Entergy to repair the property. This determination does not involve an issue of intent. This assignment of error has no merit.
ASSIGNMENT OF ERROR NO. 6
In this assignment of error, Allan Company asserts that the trial court erred in excluding from evidence a December 19, 1983 letter from John Culver to Alex Plaisance. Allan Company asserts that the letter had been misfiled and that it was produced in a supplement to discovery responses filed immediately after the letter was located. The standard of review for a trial court's evidentiary rulings is abuse of discretion; the trial court's ruling will not be disturbed unless it is clearly erroneous. Riverside Recycling, LLC v. BWI Companies, Inc. of Texas, 2012-0588 (La. App. 1 Cir. 12/28/12), 112 So.3d 869, 874.
On August 28, 2014, the parties agreed by joint motion to continue the trial and that there would be no further discovery. Allan Company's supplemental response to Entergy's discovery requests was filed on February 17, 2016. The trial court denied admission of the letter on the *1096 basis that the letter was not produced until after the discovery period had closed. The trial court noted that the letter was not new evidence, as it had been in the possession of Allan Company all along. After review, we find no abuse of discretion in the trial court's determination that the December 19, 1983 letter not be admitted into evidence. This assignment of error has no merit.
CONCLUSION
We find that Entergy pointed out in its motion for summary judgment the absence of factual support sufficient to establish that there was a contract between Entergy and Allan Company for Entergy to repair damage to Allan Company property that occurred during post-Hurricane Katrina repair work to Entergy's transmission line. Thus, the burden was on Allan Company to produce factual support sufficient to establish the existence of a genuine issue of material fact as to whether there was a valid oral agreement by Entergy to repair the damage to Allan Company property, or that Entergy was not entitled to judgment as a matter of law. See La. C.C.P. art. 966D(1). We find that Allan Company failed to meet that burden, therefore, summary judgment is appropriate.
Thus, for the foregoing reasons, the appeal is maintained and the trial court judgment, granting summary judgment in favor of Entergy Louisiana, LLC and Aegis Insurance Services, Ltd., and dismissing the breach of contract claims of Allan Company-Golden Meadow, LLC, is affirmed. Costs of this appeal are assessed against Allan Company-Golden Meadow, LLC.
APPEAL MAINTAINED; JUDGMENT AFFIRMED.
Allan Company-Golden Meadow, LLC (Allan Co.) asserts that it entered into an oral agreement with Entergy Louisiana, LLC (Entergy) by which Entergy agreed to restore any damage it caused to Allan Co.'s property in the repair of an Entergy electrical transmission line after it sustained damaged during Hurricane Katrina. Under the broad language contained in the 1957 right-of-way agreement, Allan Company granted Entergy the "free right of ingress and egress" in, from, and upon the right of way for maintaining and repairing its transmission line over lands that adjoined the right of way belonging to Allan Co.[1] As such, any requirement of restoration of damage to the property by Allan Co. as a result of Entergy's use of the right of way, separate and apart from those obligations incurred by Entergy as a matter of law,[2] would constitute an alteration of the rights of ingress and egress granted by the 1957 right-of-way agreement. Thus, any restriction or obligation placed upon that right, other than those imposed by law, would be a modification of the servitude. Because Allan Co. was unable to show a writing specifically delineating the scope of power given to Alex Plaisance of John Plaisance & Sons (JP & S) to act on behalf of Allan Co., I concur in the result.
*1097 Whether by mandate or procuration, for Alex Plaisance to have duly represented Allan Co. in a modification of the servitude contained in the 1957 right-of-way agreement, as permitted under La. C.C. art. 1839 allowing for an oral transfer, the act conferring such authority had to be written and express. See La. C.C. arts. 2986, 2988, 2993, and 2996.[3]
The November 1, 1983 Trapping Agreement between Allan Co. and JP & S does not expressly grant such authority, as Allan Co. corporate representative John Culver acknowledged in his deposition testimony. Moreover, while I agree that exclusion of the December 19, 1983 letter was not an abuse of the trial court's discretion, even if it were considered, its contents failed to set forth an express grant of authority to Alex Plaisance, conferring on him the right to modify the terms of the 1957 right-of-way agreement on behalf of Allan Co.
Lacking such written, express authority, any evidence offered by Allan Co. which supported a finding that Entergy orally agreed to modify its right of ingress and egress to provide for damages for restoration of the property was insufficient to establish the existence of a genuine issue of material fact. This is because an oral agreement to restore property by Entergy to Alex Plaisance in favor of Allan Co. is correctly characterized as a modification of the right-of-way agreement, see Miller v. Long Oil & Gas Exploration, Ltd., 542 So.2d 75, 79 (La. App. 1st Cir.), writ denied, 544 So.2d 403 (La. 1989), thereby requiring that the authority for Alex Plaisance's representation be written and express. To hold otherwise necessarily ignores the broad language of the 1957 right-of-way agreement and the nature of the right of ingress and egress bestowed to the grantee under the terms of the right-of-way agreement.
Mindful that the sole issue before the trial court in this motion for summary judgment was whether Entergy was entitled to the dismissal of Allan Co.'s claims arising out of a theory of breach of contract, and that any issues as to whether Entergy may owe restoration damages to Allan Co. under servitude law are before this court in Lafourche Realty Co., Inc. v. Entergy, Louisiana, Inc., 2017-0849 (La. App. 1st Cir. --/--/--), --- So.3d ----, I agree that trial court correctly granted summary judgment in this matter.

During the course of the proceedings, The Allan Company transferred the property at issue and its interest in this suit to Allan Company-Golden Meadow, LLC.

The claims for restoration damages were dismissed by the trial court in a separate summary judgment signed on November 30, 2016, and the appeal of that judgment is addressed in a companion case, Lafourche Realty Company, Inc. v. Entergy Louisiana, Inc., 2017-0849 (La. App. 1 Cir._/_/_).

Castex Lafourche, LP (Castex), a successor in interest to Lafourche Realty Company, was substituted as plaintiff in place of Lafourche Realty Company, Inc. on February 4, 2009. Castex later settled its claims against Entergy and those claims were dismissed on November 16, 2010.

Louisiana Power & Light Company became Entergy Louisiana Holding, Inc., which was succeeded by Entergy Louisiana, Inc., and is now Entergy Louisiana, LLC.

The claims of Allan Company, Elizabeth Culver Jahncke, Jeanie Culver Dragon, and John A. Culver against Irby Construction Company and Old Republic Insurance Company were dismissed by judgment dated July 17, 2013.

The claims of Allan Company against Marsh Buggies, Inc., Frogco Amphibious Equipment, Inc., Frogco Rentals, LLC, and Alea London, Ltd., were dismissed by judgment dated March 13, 2017.

The judgment on appeal dismisses only the claim for breach of contract. Thus, we decline to address assignments of error numbers one, three, five, and seven, as these assignments of error are not relevant to the judgment on appeal in this case.

Specifically, the 1957 right-of-way agreement states, that Allan Co., as grantor, delivers to Entergy, as grantee, "the free right of ingress and egress in and from and upon said Right of Way for the purpose of ... maintaining [and] repairing ... at [Entergy's] will [the] transmission line[,]" which right included the "privilege forever to ... alter [and] repair ... such ... lines ... and all other rights ... necessary or convenient for the full use and enjoyment of the Right of Way ... including the right of ingress and egress to and from the Right of Way over adjoining lands" belonging to Allan Co.

See e.g., La. C.C. art. 745.

Louisiana Civil Code article 2986 provides, "The authority of the representative may be conferred by law, by contract, such as mandate or partnership, or by the unilateral juridical act of procuration." Article 2988 states, "A procuration is subject to the rules governing mandate to the extent that the application of those rules is compatible with the nature of the procuration." The provisions of Article 2993 set forth, in pertinent part, "[W]hen the law prescribes a certain form for an act, a mandate authorizing the act must be in that form." And according to Article 2996, "The authority to alienate, acquire, encumber, or lease a thing must be given expressly."